BRIAN M. ROTHSCHILD (Bar No. 252573)
DARREN NEILSON (Bar No. 276159)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone:    801.532.1234
Facsimile:    801.536.6111
Email:        BRothschild@parsonbehle.com
              DNeilson@parsonbehle.com

*Attorneys for NORTH FORTY CONSULTING LLC*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| BUNSOW DE MORY LLP, a California limited liability partnership,<br><br>        Plaintiff and Counterclaim Defendant,<br><br>    v.<br><br>NORTH FORTY CONSULTING LLC, a Delaware limited liability company,<br><br>        Defendant and Counterclaimant. | Case No. 3:20-CV-04997<br><br>**NORTH FORTY CONSULTING LLC'S OPPOSITION TO BUNSOW DE MORY LLP'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Filing Date: July 24, 2020<br>Trial Date:   Dec. 06, 2021<br><br>Hearing Date: January 7, 2021<br>Hearing Time: 9:00 a.m.<br>Courtroom E, 15th Floor<br>Judge: Hon. Jacqueline Corley, M.J. |

**TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACT ......................................................................................1

        A.      The Consulting Agreement.......................................................................3

        B.      The Comcast Litigation...........................................................................5

        C.      The Acacia Patent Agreement, the Consulting Agreement Termination,
                and North Forty's Continued Work on Harris' and BDIP's Behalf.....................5

III.    LEGAL STANDARD............................................................................................7

IV.     ARGUMENT .......................................................................................................7

        A.      The Parties Intended the Term "Litigation" Under § 3.1(b) of the
                Consulting Agreement to Mean Offensive Litigation..............................7

        B.      BDIP's Argument North Forty Is Not Owed a Success Fee for the Acacia
                Deal Is Not Supported By, Nor Resolvable on the Pleadings .............................11

V.      CONCLUSION ..................................................................................................13

Case No. 3:20-CV-04997
4821-6749-8708.v1

# TABLE OF AUTHORITIES

**Cases**

*Amersbach v. City of Cleveland*,
   598 F.2d 1033 (6th Cir. 1979) ................................................................. 1

*Coats v. General Motors Corp.,*
   (1934) 3 Cal. App.2d 340 [39 P.2d 838] ................................................. 12

*DeSoto v. Yellow Freight Sys., Inc.,*
   957 F.2d 655 (9th Cir. 1992) ................................................................... 1

*Fleming v. Pickard,*
   581 F.3d 922 (9th Cir. 2009) ................................................................... 7

*Grant v. The Aerodraulics Co.*,
   91 Cal. App. 2d 68 ........................................................................... 11, 12

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
   896 F.2d 1542 (9th Cir.1989) ................................................................. 7

Los Angeles City Employees Union v. City of El Monte,
   (1985) 177 Cal.App.3d 615 [ 220 Cal.Rptr. 411] .................................... 7

*Moran v. Peralta Cmty. Coll. Dist.*,
   825 F.Supp. 891 (N.D. Cal. 1993) .......................................................... 1

Pacific Gas Electric,
   supra, 69 Cal.2d at p. ............................................................................. 7

*Rosenfeld, Meyer & Susman v. Cohen*,
   (1983) 146 Cal. App. 3d 200 ................................................................. 12

*Savage v. Council On American-Islamic Relations, Inc.*,
   2008 WL 2951281 (N.D. Cal. 2008) ...................................................... 7

*Southern Cal. Edison Co. v. Superior Cour*t, supra, at p. 838,
   44 Cal.Rptr.2d 227 ................................................................................. 8

*Wolf v. Walt Disney Pictures & Television*,
   162 Cal.App.4th 1107 (Cal. Ct. App. 2008) ........................................... 7

**Statutes**

Cal. Civ. Code §1647 ............................................................................. 10

Cal. Civ. Code § 1636 ...................................................................7, 8, 10

Cal. Civ. Code § 1641 .............................................................4, 7, 8, 9, 10

Case No. 3:20-CV-04997
4821-6749-8708.v1

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

Cal. Civ. Code, § 1635 ............................................................................................ 8

**Rules**

Fed.R.Civ.P. 12(c).............................................................................................7, 8

-iii-

North Forty Consulting LLC ("North Forty"), by and through counsel, hereby oppose (the "Opposition") Bunsow De Mory LLP's ("BDIP") motion for judgment on the pleadings (the "Motion").  This Opposition is based on the documents previously filed in this matter as well as the Declaration of David L. Barnes ("Barnes Declaration") attached hereto.

## I.   <u>INTRODUCTION</u>

BDIP**'s** motion for judgement on the pleadings must be denied.  Not only does BDIP mischaracterize North Forty's counterclaim and other responsive pleadings, it also ignores pertinent law.

Germane to BDIP's Motion, North Forty more than adequately pled the allegations in its Counterclaim that BDIP unreasonably and in breach of the contract between North Forty and BDIP, withheld payment to North Forty for the Comcast Settlement and the Acacia Sale.

BDIP's Motion is premature and is an attempt to short circuit North Forty's discovery attempts.  This matter is in its infancy.  The deadline to move to amend pleadings is currently set for January 8, 2021 [Docket No. 32].  As will be set forth below, material issues of fact abound in this matter and the Court should deny BDIP's Motion and let this matter move to discovery. Alternatively, this Court should grant North Forty leave to amend its Counterclaim to set forth more fully facts and documents to support its claims. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (holding that in the event a motion for judgment on the pleadings is granted, leave to amend should be freely granted and will be denied only if it is clear that the deficiencies of the complaint cannot be cured by amendment.); *Moran v. Peralta Cmty. Coll. Dist.*, 825 F.Supp. 891, 893 (N.D. Cal. 1993) *citing Amersbach v. City of Cleveland*, 598 F.2d 1033, 1038 (6th Cir. 1979).

## II.   <u>STATEMENT OF FACT</u>

In the spring of 2017, BDIP requested North Forty assist BDIP to  provide consulting services to identify patents, initial targets, and the monetization and enforcement of BDIP clients' patent portfolio. (First Amended Counterclaims ("Am. Countercl.") ¶¶ 3 and 15 [Docket No. 27]; Answer to First Amended Counterclaims ("Answer Am. Countercl.") ¶ 15).   Shortly thereafter, BDIP and North Forty began extensive discussions and negotiations regarding the scope of North

-1-

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

1   Forty's services and the compensation of the same. (Am. Countercl. ¶ 16; Answer Am. Countercl.

2   ¶ 16; *See* also Barnes Declaration ¶¶ 5 – 10).   Based on BDIP's representations to North Forty,

3   North Forty and BDIP entered into the Consulting Agreement on September 1, 2017 (the

4   "Consulting Agreement").  ([Docket No. 1] Complaint ("Compl.") ¶ 20; First Amended Answer

5   (Dkt. 28-4) ("Answer") ¶ 20; Am. Countercl. ¶ 17; Pfeffer Decl. Ex. A).

6        A review of the Consulting Agreement indicates that the Consulting Agreement was

7   drafted generally to ████████████████████████████ *See* Exhibit "A" to

8   Pfeffer Declaration. ████████████████████████████████████

9   ████████████████████████████████████████████████

10  This fact is important because when building a contract to cover multiple clients, specificity is

11  often sacrificed in order to cover the broad scope of the agreement subject matter, as is the case in

12  the Consulting Agreement and will be discussed below.

13       Finally, it is important for the Court to understand the context in which the Consulting

14  Agreement was negotiated and performed by the parties. Generally speaking, North Forty and

15  BDIP are in the unique business of monetizing patents, i.e., a business of making money from the

16  actual, or threat of, legal enforcement of patent rights.   *See* the recitals of the Consulting

17  Agreement.

18       BDIP, as a law firm, assists clients in monetizing their patents through offensive litigation,

19  or, as stated in the Consulting Agreement ████████████████████████

20  ██████  This is sometimes referred to as "hard" patent monetization.  In this business of hard patent

21  monetization BDIP's clients do not finance the litigations filed on their behalf by BDIP.  Rather,

22  BDIP works with litigation funding or lending institutions to pay themselves, and for services used

23  during litigations.   In exchange for the financing, the funding or lending institution receives a

24  percentage of any awarded infringement damages. *See* Exhibits "B" and "C" to the Barnes

25  Declaration.

26       North Forty, as a consulting group, not only assists law firms, like BDIP, in their hard

27  patent monetizing efforts, but also assists operating companies  commercializing their patents

28  through  identification  of  potential  patent  infringements,  documentation  of  the  alleged

-2-

infringement, and negotiations with suspected patent infringers to work out a license or other compensation scheme that addresses the needs and interests of both the suspected patent infringer and the patent holder.  This type of patent monetization is sometimes referred to as "soft" patent monetization and is set forth in the ███████████████. *See also* Exhibits "B" and "C" to the Barnes Declaration.

The ████████████████████████████████████████ ████████████████████████████████████████████ ███████████████. *See also* Exhibits "B" and "C" to Barnes Declaration.

One common current to the parties' participation is that of monetization of the patents (i.e., generating money via patent rights).  With this understanding that the entire enterprise for which the Consulting Agreement was created was to make money from the actual, or threat of, legal enforcement of patent rights in mind, it is obvious that an alleged patent infringer's filing of a defensive pleading, alone, absent any offensive assertion, or counter assertion, will not accomplish the sole purpose of the Consulting Agreement to generate money from patents.  That is, a defensive pleading filed against a BDIP client, absent any offensive counterclaim (i.e., a claim for an award of infringement damages), necessarily will not result in a monetization of the patents via litigation, as no money can be awarded.  A ██████████████████████████████████ ██████████ cannot therefore be achieved by a defensive pleading alone, and as such, ██████████ to apply, a defensive pleading must be accompanied with a counterclaim or some other formal offensive legal assertion of rights and damages.  As will be discussed below, the parties never intended to include defensive only filings or litigation when negotiating the Consulting Agreement.  Such a broad interpretation of the Consulting Agreement goes against the overall intent of the Consulting Agreement and parties stated goal in entering into the Consulting Agreement.

A.   **The Consulting Agreement**

The Consulting Agreement, among other things, defined (1) the scope and nature of the parties' respective authorization concerning the effort to monetize patents on behalf of BDIP Clients, and (2) the scope and nature of the parties' respective obligations in the context of such authorizations.

-3-

The definition of the term ███████████████████████████ is susceptible to more than one interpretation. BDIP, via its Motion, self-servingly suggests that the definition of term ██████████ was intended to be as broad as possible, conveniently ignoring the parties' actual intention at the time of contracting, to limit litigation to monetization offensive filings by BDIP on behalf of their clients.  As set forth in their Amended Counterclaim in ¶ 40, North Forty has alleged that monetization litigation as understood by the parties when contracting "…was intended for offensive filing on behalf of BDIP's clients and not defensive filings like the Comcast Litigation."  *See* Amended Counterclaim ¶ 40. Such an alternative interpretation is plausible in view of the Consulting Agreement as a whole as well as the parties' negotiations relative thereto, and defeats BDIP Motion as to the ██████████████████.

Cal. Civ. Code § 1641, requires the Court to view the Consulting Agreement as a whole when interpreting a contract provision.  Important to the Motion and to show the intent of parties with regard to the ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████

The foregoing authorization and obligation limitations gave effect to ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

**B.** <u>**The Comcast Litigation**</u>

North Forty, as part of its obligation to commercialize Harris' patent portfolio, was in ongoing discussions with Comcast regarding a negotiated settlement between Comcast and Harris, when, as part of that negotiation, to engage Harris directly (Harris having previously deferred Comcast's repeated requests for a direct line of communication to North Forty), Comcast filed a declaratory action against Harris on or about December 9, 2019. (Am. Countercl. ¶¶ 36-37). Harris did not sue Comcast on one or more of its patents (Am. Countercl. ¶ 38; *see also* BDIP's Request for Judicial Notice ("RJN"), Ex. B). ████████████████████████████

████████████████████████████ *see also* Am. Countercl. ¶ 40 and BDIP's mischaracterization thereof as "*North Forty's attempt to conjure ambiguity … with the parties' unwritten intent and with some unidentified industry practice for litigation funding*" (BDIP motion, p.6, lns.1-7)). Instead, North Forty and Harris successfully negotiated a patent agreement, resulting in Comcast voluntarily dismissing the declaratory action. (Am. Countercl. ¶ 39; BDIP's RJN, Ex. B [Docket No. 35-4]).

The parties intent via the ████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████████████
████████████████████████████████

**C.** <u>**The Acacia Patent Agreement, the Consulting Agreement Termination, and North Forty's Continued Work on Harris' and BDIP's Behalf**</u>

In or around October 2019, Acacia, a non-practicing patent monetizing entity, began negotiations with Harris concerning purchasing the developed Harris patent monetization program (Am. Countercl. ¶ 34). During the negotiations between Acacia and Harris North Forty repeatedly

-5-

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

reached out to BDIP and requested clarification as to the nature of BDIP's agreement with Harris and its treatment should Harris sell its patents. *Id. ¶¶* 41-44.  BDIP informed North Forty that a sale of Harris' patents under BDIP's retainer agreement with Harris was treated the same as a ████████████  *Id.*  It was not until February 26, 2020, after Harris had signed an agreement with Acacia, and after North Forty had done extensive work to demonstrate the value of the program North Forty built to Acacia, when BDIP admitted, simultaneously with terminating the Consulting Agreement, that they "did not give [North Forty] correct information about [BDIP's] agreement with Harris when we last spoke." *Id.*

Notwithstanding the "termination" of the Consulting Agreement, North Forty continued to provide consulting services in support of BDIP and Harris.  Specifically, North Forty continued to provide services to both BDIP and Harris in regards to the Acacia negotiation and deal, responding to each request Harris made of North Forty, including (i) conducting license discussions and supporting deal closure with Landis+Gyr Inc. ("Landis") on March 9, 2020; and (ii) at Harris' specific request, continuing commercialization discussions with prospective licensees to entice Acacia to close (Am. Countercl. ¶¶ 35; 48; 53).

On or about February 21, 2020, Harris entered into a Patent Agreement, ████████████ with Acacia (the "Acacia Patent Agreement") (Am. Countercl. ¶ 46).   On February 27, 2020, in discussing BDIP's emailed notice of termination of February 26, 2020, BDIP informed North Forty of its intent not to perform its accrued obligations under the Consulting Agreement, including paying North Forty fees due relative to, *inter alia*, the signed Acacia Patent Agreement (Am. Countercl. ¶ 47)

In or around March 2020, Acacia determined not to proceed with the transfer of Harris' ownership rights in the patents (i.e., the acquisition of the patents) under the existing financial terms of the Acacia Patent Agreement due to the economic uncertainty created by the Covid-19 pandemic (Am. Countercl. ¶ 49).  North Forty continued to respond to and support Harris and BDIP relative to closing the patent right transfer under the Acacia Patent Agreement (Am. Countercl. ¶ 48).   On or about April 20, 2020, Harris and Acacia closed the patent right transfer on slightly revised financial terms (Am. Countercl. ¶ 50).

-6-

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

## III.     LEGAL STANDARD

        After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. Fed.R.Civ.P. 12(c). Judgment on the pleadings is proper when the moving party "clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1989). For purposes of the motion, "the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false." *Id.; see also Savage v. Council On American-Islamic Relations, Inc.*, 2008 WL 2951281 (N.D. Cal. 2008). Moreover, all inferences reasonably drawn from the facts alleged in the complaint must be construed in favor of the responding party. *Fleming v. Pickard, 581 F.3d 922, 925 (9th Cir. 2009).*

## IV.     ARGUMENT

        As demonstrated below, North Forty has adequately alleged facts which prevent BDIP from the relief sought via BDIP's Motion.

### A.     The Parties Intended the Term "Litigation" Under § 3.1(b) of the Consulting Agreement to Mean Offensive Litigation

        Under California law, a contract must be so interpreted as to give "effect to the mutual intention of the parties as it existed" at the time of contracting (Cal. Civ. Code § 1636). California law further states that "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other" (Cal. Civ. Code § 1641). Extrinsic evidence is admissible to interpret an agreement when a material term is ambiguous. *Wolf v. Walt Disney Pictures & Television*, 162 Cal.App.4th 1107, 1126 (Cal. Ct. App. 2008) (*Citing* Code Civ. Proc., § 1856, subd. (g); *Pacific Gas Electric, supra*, 69 Cal.2d at p. 37 [if extrinsic evidence reveals that apparently clear language in the contract is, in fact, susceptible to more than one reasonable interpretation, then extrinsic evidence may be used to determine the contracting parties' objective intent]; *Los Angeles City Employees Union v. City of El Monte* (1985) 177 Cal.App.3d 615, 622 [ 220 Cal.Rptr. 411].) North Forty has set forth its plausible understanding of the Consulting Agreement that it negotiated with BDIP. Taking North

-7-

1   Forty's allegations as true, as is required under a motion brought under FRCP 12(c), North Forty

2   has alleged that "[w]hen negotiating the Consulting Agreement, ███████████████████

3   ███████████████████████████████████████████████████████████████

4   ███████████████████████████████████████████████████████████████

5   █████████████████████████ Amended Complaint ¶ 40.

6       BDIPs attempt to make the case that ███████████████████████ at

7   the time of contracting, was understood by both parties to mean any litigation involving the

8   Patents, and not litigation in which a BDIP Client, in monetizing its Patents sues for infringement

9   and to collect damages, is not born out by the Consulting Agreement or the facts.

10      BDIP cites *Cedars-Sinai Medical Center v. Shewry*, in arguing that "[t]he language of the

11  Consulting Agreement is not susceptible to North Forty's interpretation" (Motion p.6, lns.20-21),

12  but fails to address whether the language of the Consulting Agreement "is reasonably susceptible

13  to the interpretation" urged by BDIP, conveniently overlooking the California Court of Appeals'

14  observation in that very case that "[w]hether the contract is reasonably susceptible to a party's

15  interpretation can be determined from the language of the contract itself or from extrinsic evidence

16  of the parties' intent (*Southern Cal. Edison Co. v. Superior Cour*t, supra, at p. 838, 44 Cal.Rptr.2d

17  227).

18      In applying the rules by which all contracts under California law are to be interpreted (Cal.

19  Civ. Code, § 1635) to the Consulting Agreement, BDIP's argument that "[t]he language of the

20  Consulting Agreement is not susceptible to North Forty's interpretation" (Motion p.6, lns.20-21)

21  lacks merit.  The mutual intention of the parties at the time of contracting (Cal. Civ. Code, § 1636)

22  was not for the term ███████████████████████████████████████

23  ██████████████   This fact can be demonstrated via the language of the Consulting

24  Agreement itself, as well as from extrinsic evidence of the parties' intent when contracting.

25      First, upon review of the "whole of the contract" (Cal. Civ. Code, § 1641) it is clear that

26  both ███████████████████████████████████████████████████

27  ███████████████████████████████████████████████████████████████

28  ███████████████████████████████████████████████████████████████

-8-

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

1  ████████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████████

3  ████████████████████████████████████████████████████████

4  ████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████████

7  ████████████████████████ to mean any litigation involving the Patents, including a litigation in

8  which a BDIP Client does not enforce its Patents by "su[ing] for infringement…[to] collect

9  damages", such as, for example, in an "Inter Partes Review" or "IPR" litigation, the parties were

10  sufficiently sophisticated to have included a provision to address such a circumstance.

11  Further, as noted by the Court in *Cedars-Sinai Medical Center v. Shewry*, a determination

12  of "[w]hether the contract is reasonably susceptible to a party's interpretation can be determined

13  … from extrinsic evidence of the parties' intent".   Also, any latent ambiguity concerning what the

14  parties intended to mean by the term ████████████████████ can be

15  rectified via extrinsic evidence (i.e., "by reference to the circumstances under which it was made,

16  as well as the matter to which it relates" (Civ. Code, § 1647)), noting if the terms of the Consulting

17  Agreement "are in any respect ambiguous or uncertain, such terms <u>must</u> be interpreted in the sense

18  in which the promisor [BDIP's representation ██████████ believed, at the time of making it,

19  that the promisee [North Forty] understood it" *See* Civ. Code, § 1649 (emphasis added).

20  North Forty understood the term ████████████████████, ████

21  ████████████████████████████████████████████████████████

22  ████████████████████ That is, as stated by BDIP, when discussing the anticipated

23  patent monetization initiatives ██████████████████████████████

24  ████████████████████████████████ (*see* Exhibit "B" to Barnes

25  Declaration).   This understanding is buttressed both by, (i) as discussed above, the provisions of

26  the Consulting Agreement ██████████████████ (Cal. Civ. Code §1641)) and (ii) the

27  cotemporaneous communications between the parties at the time of contracting (Civ. Code, §

28  1647).   It is significant to also note that the cotemporaneous communications confirm that a "DJ"

-9-

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

1 (Declaratory Judgment) was not, at the time of contracting, expected by the parties, and as such,

2 was intentionally not covered by the Consulting Agreement to the extent that a BDIP Client did

3 not respond to a "DJ" by offensively "filing suit" ████████████████████████████████

4 ████████████████████ *See* Exhibit "A" to Barnes Declaration.

5        Moreover, the Consulting Agreement also provided that BDIP's ████████████████████

6 ████████████████████████████████████████████████████████████████████████████████████

7 ██████████████████████████████████████████████████████ (emphasis added).

8 BDIP conveniently overlooks this express language, perhaps appreciating that the Consulting

9 Agreement only provided for a circumstance where BDIP's ████████████████████████████

10 ████████████████████████████████████████████████████████████████████████████████████

11 ████████████████████████ It was against this backdrop of a third party security interest,

12 that BDIP and North Forty negotiated ████████████████████████████ whereby BDIP

13 justified an "████████████████████████████████████████████████████████████████████

14 ████████████████████ *See* Exhibit "C" to Barnes Declaration.

15        With the foregoing in mind, North Forty respectfully submits that (1) the terms of the

16 Consulting Agreement are clear and "[t]he whole of a contract" (Cal. Civ. Code §1641) taken

17 together gives effect to interpreting the term ████████████████████████████████ to

18 have meant by the parties, at the time of contracting (Cal. Civ. Code, § 1636), litigation in which

19 both (i) ████████████████████████████████████████████████████████████████████████

20 ████████████████████████████████████████████████████████████████████████████████████

21 ████████████████████████████████████████████████████████████████████████████████████

22 ████████████████████████ (*See* Exhibits A-C to Barnes Declaration; (Cal.

23 Civ. Code §1647)); and, in view of (1), ████████████████████████████████████████

24 ████████████████████████████ noting Harris, a BDIP Client, did not sue Comcast for

25 infringement on one or more of the Patents to collect damages in the Comcast litigation. The Court

26 may take judicial notice of this fact (i.e., that Harris did not commence any legal action to enforce

27 a patent right or to seek infringement damages by filing a claim, counterclaim, answer or any

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

responsive pleading at all) *see* BDIP's Ex. B to Pfeffer Declaration.   Separately, and in addition, no third-party security interest was brought in, to finance BDIP in the Comcast litigation.

It follows that BDIP's argument suggesting "[t]he language of the Consulting Agreement is not susceptible to North Forty's interpretation" (Motion on the Pleadings, p.6, lns.20-21) lacks merit and must be rejected, nor can it be resolved on the pleadings.

**B.      BDIP's Argument North Forty Is Not Owed a Success Fee for the Acacia Deal Is Not Supported By, Nor Resolvable on the Pleadings**

Contrary to BDIP's contention that there are no material facts in dispute concerning ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ because (i) North Forty admitted "[t]he Consulting Agreement, by its plain terms, requires 30 days' notice.  Thus, termination was effective March 27, 2020" (Compl. ¶ 38; Answer ¶ 38); and (ii) the "Consulting Agreement does not contain any provision suggesting that North Forty's entitlement to success fees survives termination" (Motion, p.7, lns.21-23), multiple material facts remain in dispute concerning the Acacia Patent Agreement and "North Forty's entitlement to ▮▮▮▮▮▮▮▮▮▮▮" (Motion, p.7, lns.21-23), irrespective of when the Consulting Agreement was terminated.

The following issues of fact remain regarding North Forty's allegations as to a ▮▮▮▮ ▮▮▮▮▮▮▮▮:

a.      BDIP admits that "[o]n February 21, 2020, Harris and Acacia entered into an agreement whereby Acacia was to purchase the Patents from Harris with a 30-day close subject to due diligence" (Complaint. ¶ 36).   The relevance of this signed Acacia Patent Agreement to BDIP's accrued obligation to pay ▮▮▮▮▮▮ is a material fact for a trier of fact to assess. "According to the settled rule of construction, 'the exercise of an option to terminate prevents liability for further transactions but does not affect obligations which have already accrued" (emphasis added) (*Grant v. The Aerodraulics Co.*, 91 Cal. App. 2d 68 - Cal: Court of Appeal 1949).   BDIP's obligation to pay North Forty relative to the Acacia Patent Agreement accrued prior to BDIP's notice of termination, and as such, BDIP's obligation to pay North Forty relative to Acacia survives.

b.       North Forty's pleadings contend that "a dispute existed [prior to BDIP's notice of termination] … regarding whether ███████████████████████████████████████████ ████████████ (Am. Answer ¶ 39; Am. Countercl. ¶ 41-47; *see also Grant v. The Aerodraulics Co.*, 91 Cal. App. 2d 68 - Cal: Court of Appeal 1949 ("A motion for judgment on the pleadings is in the nature of a general demurrer, and the trial court in ruling thereon <u>must treat the allegations of the challenged pleading as true</u>" (emphasis added)).  When the dispute concerning a ██████ ██████████████████████████ began, as well as BDIP's conduct relative to such dispute, are material facts for a trier of fact to assess in the context of the relevant causes of action pled by North Forty.

c.       Evidence is available from which a trier of fact could infer that BDIP's action in repudiating/terminating the Consulting Agreement (notwithstanding an appropriate form/process of termination) immediately, and only, after its obligation to pay North Forty accrued was done in bad faith.  In October 2019, BDIP represented that it "did not want to sell to Acacia" and that it "had invested 500k before [North Forty] got involved…[and with] the Huawei investment…[BDIP was] at least $2M in at this point…[and] would not break even on a sale probably" (Am. Countercl. ¶ 42: *See* also Exhibit "D" to Barnes Declaration).  In January 2020, in discussing a purported agreement amendment proposal to be provided to North Forty, BDIP indicated that ██████████ █████████████████████████████ were "small issues in view of the economics of concern" (Am. Countercl. ¶ 43; *See* also Exhibit "E" to Barnes Declaration).  In February 2020, after North Forty, with Harris, successfully negotiated "Patent Agreements" ████████████ with both ████████████████████████████████████████), BDIP contemporaneously with providing their notice of termination, informed North Forty of their intent not to ████████ █████████████████████████████████████ (Am. Countercl. ¶ 47).  Though BDIP may dispute these facts and the inferences that North Forty draws therefrom, the merits of such require further discovery and a determination by a trier of fact (*See Coats v. General Motors Corp.* (1934) 3 Cal. App.2d 340, 348 [39 P.2d 838], s*ee also Rosenfeld, Meyer & Susman v. Cohen*, (1983) 146 Cal. App. 3d 200, 215 ("even nonfiduciaries must exercise their rights in good faith,

-12-

OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

4821-6749-8708.v1

deal fairly with each other and refrain from injuring the right of another party to receive the benefits of an agreement or relationship")).

       d.    The transfer of patent ownership rights to Acacia is integral to several causes of action pled by both parties (e.g., BDIP's breach of contract and North Forty's purported breach of fiduciary duty), as well as to a number of affirmative defenses put forth by both parties (e.g., prior breach, unclean hands).

       In view of at least the forgoing, BDIP's argument that there are no material facts in dispute concerning ███████████████████████████ lacks merit, must be rejected, and cannot be resolved on the pleadings.

## V.   **CONCLUSION**

       BDIP's premature Motion should be denied.  As set forth above, the facts alleged in the Amended Counterclaim meet the pleading requirements under Rules 8 and 9 and demonstrate that a plausible claim has been pled taking the facts in the light most favorable to North Forty.

Dated:  12/08/2020                  PARSONS BEHLE & LATIMER

                               */s/ Darren Neilson*

                By:       BRIAN M. ROTHSCHILD
                       DARREN NEILSON
                       Attorneys for NORTH FORTY
                       CONSULTING LLC

Case No. 3:20-CV-04997                         OPPOSITION TO MOTION FOR JUDGMENT
ON THE PLEADINGS

1  BRIAN M. ROTHSCHILD (Bar No. 252573)
   DARREN NEILSON (Bar No. 276159)
2  PARSONS BEHLE & LATIMER
   201 South Main Street, Suite 1800
3  Salt Lake City, Utah 84111
   Telephone:    801.532.1234
4  Facsimile:    801.536.6111
   Email:        BRothschild@parsonbehle.com
5                DNeilson@parsonbehle.com

6  *Attorneys for NORTH FORTY CONSULTING LLC*

7

8                  **UNITED STATES DISTRICT COURT**
                   **NORTHERN DISTRICT OF CALIFORNIA**
9                  **SAN FRANCISCO DIVISION**

10

11  BUNSOW DE MORY LLP, a California          Case No. 3:20-CV-04997
    limited liability partnership,
12                                            **DECLARATION OF DAVE BARNES IN**
                  Plaintiff and Counterclaim   **SUPPORT OF NORTH FORTY**
13                Defendant,                   **CONSULTING LLC'S OPPOSITION TO**
                                               **BUNSOW DE MORY LLP'S MOTION**
14        v.                                   **FOR JUDGMENT ON THE PLEADINGS**

15  NORTH FORTY CONSULTING LLC, a            Filing Date: September 22, 2020
    Delaware limited liability company,     Trial Date:   Not Assigned
16                                           Department: Not Assigned
                  Defendant and             Magistrate Judge Corley
17                Counterclaimant.

18

19        I, David L. Barnes, hereby declare:

20        1.      I am a member of North Forty Consulting, LLC ("**North Forty**").  I submit this

21  declaration in support of North Forty's Opposition to Bunsow De Mory LLP's Motion for

22  Judgment on the Pleadings.

23        2.      All statements to the best of my knowledge are true and correct.

24        3.      I am over the age of 18.

25        4.      In the Spring of 2017, my partner and I began negotiations with Denise De Mory

26  from BDIP with regards to BDIP retaining North Forty's consulting services in monetizing BDIP's

27  Client's patent portfolio.

28        5.      In furtherance of the negotiations, attached hereto as Exhibit A is a true and correct

    copy of an email correspondence between North Forty and BDIP dated April 27, 2017 in with

                                           -1-

BDIP discusses its plan for two patent monetization initiatives, a litigation initiative and a non-litigation initiative.

6.     Attached hereto as Exhibit B is a true and correct copy an email correspondence between North Forty and BDIP dated May 28, 2017 in which BDIP discusses the payment structure under the litigation initiative.

7.     Attached hereto as Exhibit C is a true and correct copy of an email correspondence between North Forty and BDIP dated August 24, 2017 in which BDIP further discusses BDIP's monetization litigation initiative.

8.     Attached hereto as Exhibit D is a screenshot of a text conversation between myself and Denise De Mory of October 23, 2019 in which BDIP discusses how they specifically did not want to sell to Acacia because they would lose money via the Huawei litigation if an Acacia sale closed.

9.     Attached hereto as Exhibit E is a true and correct copy of an email between North Forty and BDIP dated January 18, 2020 in which BDIP discusses how unpaid fees due to North Forty were small issues in view of the economics of the Huawei issue. .

10.    It was my understanding at the time of contracting that the term "to litigation on one or more of the PATENTS" as set forth in the Consulting Agreement under § 3.1(b) was limited to patent monetization offensive filings that BDIP brought on behalf of its client(s) after such client(s) approved suing for infringement to collect damages, and for which BDIP was financed via a third party security interest (i.e., the Harris pre-approved BDIP filed suit against Huawei for which BDIP was financed via a funding company).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 8, 2020, in Fruit Heights, Utah.

_____
David L. Barnes

# Exhibit A

| | |
|---|---|
| **From:** | aaron.waxler@northfortyconsulting.com |
| **Sent:** | Friday, April 28, 2017 2:29 PM |
| **To:** | Denise De Mory |
| **Cc:** | Dave Barnes |
| **Subject:** | Re: checking in |
| | |
| **Flag Status:** | Flagged |

Awesome!  Let's have a call to get a bit more of the details (tech space, jurisdictions, ambitions, targets, etc.). We are open most of next week.

Aaron

Sent from my iPhone

On Apr 28, 2017, at 3:49 PM, Denise De Mory <ddemory@bdiplaw.com> wrote:

>  Hi Aaron,
>
>  We currently are talking to a company about enforcement of their portfolio.  There are about 1500 patents and we have isolated a portfolio of about 100 that would be subject to the program.   I am writing to get your thoughts on what you guys might be able to offer in terms of helping us identify the right patents (we will be able to add others, but want to start with a good group).   We also have some initial targets in mind and welcome your thoughts about how you might be able to help us with moving forward toward enforcement.
>
>  Denise
>
>  Denise M. De Mory
>  Managing Partner
>  <image001.png>
>  701 El Camino Real
>  Redwood City, CA  94063
>  (650) 351-7241
>  www.bdiplaw.com
>
>  Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain legally privileged and/or confidential information. If you are not one of the intended recipients, do not duplicate or forward this e-mail message.

**From:** Aaron Waxler <aaron.waxler@northfortyconsulting.com>
**Date:** Thursday, April 27, 2017 at 6:16 AM
**To:** Denise De Mory <ddemory@bdiplaw.com>
**Cc:** 'Dave Barnes' <dave.barnes@northfortyconsulting.com>
**Subject:** RE: checking in

Thanks for thinking of us!  Definitely interested and we are doing exactly this kind of game plan with two other clients.  Also happy to help with EoU, portfolio, or chart review pre litigation if it helps (in one case we found additional patents to bring into the complaint that seemed to help and in another we helped source EP patents that drove deals closer to trial).

Yours,

Aaron Waxler
North Forty Consulting, LLC
(914) 860-4296

---

**From:** Denise De Mory [mailto:ddemory@bdiplaw.com]
**Sent:** Thursday, April 27, 2017 8:51 AM
**To:** Aaron Waxler <aaron.waxler@northfortyconsulting.com>
**Cc:** 'Dave Barnes' <dave.barnes@northfortyconsulting.com>
**Subject:** Re: checking in

Hi Aaron (and Dave),

Sorry about the delayed response – ███████████████████████████████████
████████████████████████████████████

I still have you guys in mind.   We do have some new projects that are about to get going – and I have some thoughts about how we might use you.  In particular, we have two enforcement programs that we are about to start.  We will be filing suit against one target for each campaign, but maybe it makes sense to have you guys negotiate against other targets while we worry about the litigation.   I have to think about the economics, but we can talk about that, but any thoughts you have are welcome.   I think the DJ risk is low these days, particularly for our initial set of targets for each program, so I see little risk in this strategy.

I will reach out once the litigation is filed!

Denise

Denise M. De Mory
Managing Partner
<image002.png>
701 El Camino Real
Redwood City, CA  94063
(650) 351-7241
www.bdiplaw.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain legally privileged and/or confidential information. If you are not one of the intended recipients, do not duplicate or forward this e-mail message.

---

**From:** Aaron Waxler <aaron.waxler@northfortyconsulting.com>
**Date:** Friday, March 31, 2017 at 12:42 PM
**To:** Denise De Mory <ddemory@bdiplaw.com>
**Cc:** 'Dave Barnes' <dave.barnes@northfortyconsulting.com>
**Subject:** checking in

Hey Denise,

Since we last spoke we've had some success attracting business.  We've got a few smaller NPEs where we are doing the assertion work/EoU/Charting.  We have one big operating company on the sale side (really big portfolio) and another on the buy side.  Few other entities considering us for mining and chart

development.  That being said, we are definitely interested in more work so please keep us in mind if there are areas where we can help you or your clients.  We have deep industry contacts (e.g., we helped one client buy a patent family from a big operator through a straw-man and they subsequently closed a big license deal based on helping them chart and file a German complaint) we can bring to assist and our access is growing in regions like China (handset and display vendors) and Korea.

Let me know if you'd like to catch up by phone anytime.

Yours,

Aaron Waxler
North Forty Consulting, LLC
(914) 860-4296

# Exhibit B

| | |
|---|---|
| **From:** | Denise De Mory <ddemory@bdiplaw.com> |
| **Sent:** | Sunday, May 28, 2017 1:36 PM |
| **To:** | Aaron Waxler |
| **Cc:** | 'Dave Barnes' |
| **Subject:** | Re: proposal |

Let me also say that the time periods (including in no. 2) are subject to discussion/extension, etc. – the idea is simply to give you guys an incentive to stay involved and also to make sure that you will be paid for any investments you make even if folks move on to other things.

Denise

Denise M. De Mory
Managing Partner



701 El Camino Real
Redwood City, CA  94063
(650) 351-7241
www.bdiplaw.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain legally privileged and/or confidential information. If you are not one of the intended recipients, do not duplicate or forward this e-mail message.

**From:** Denise De Mory <ddemory@bdiplaw.com>
**Date:** Sunday, May 28, 2017 at 11:57 AM
**To:** Aaron Waxler <aaron.waxler@northfortyconsulting.com>
**Cc:** 'Dave Barnes' <dave.barnes@northfortyconsulting.com>
**Subject:** Re: proposal





Thoughts?   Let me know – and I hope you are having a great weekend!

Denise

Denise M. De Mory
Managing Partner

 **BUNSOW D**

701 El Camino Real
Redwood City, CA  94063
(650) 351-7241
www.bdiplaw.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain legally privileged and/or confidential information. If you are not one of the intended recipients, do not duplicate or forward this e-mail message.

**From:** Aaron Waxler <aaron.waxler@northfortyconsulting.com>
**Date:** Thursday, May 25, 2017 at 2:20 PM
**To:** Denise De Mory <ddemory@bdiplaw.com>
**Cc:** 'Dave Barnes' <dave.barnes@northfortyconsulting.com>
**Subject:** proposal

Hey Denise,

Guessing you are tied up today so here is what we propose based on yesterday's call:

Appreciating that ███████████████████████████████████████████
███████████████████████████████████████
████████████████████████████████████████████
██████████████████████

3. Facilitate existing and/or new EoU claim chart development in support of (a) a MAHNET license/litigation program, and/or (b) any identified alternative license program candidate(s)
4. Establish the foundation for a soft-licensing initiative
5. Any other support helpful to BDIP/Harris achieving their goals (*e.g., investigate/identify alternative licensee/tangential market opportunities*)

- In the event that Harris agrees to a soft assertion-program targeting non-litigants, our initial thought is an even split on upside between Harris, North Forty, and BDIP.

Happy to discuss anytime.

Yours,

Aaron Waxler
North Forty Consulting, LLC
(914) 860-4296

# Exhibit C

| | |
|---|---|
| **From:** | Denise De Mory <ddemory@bdiplaw.com> |
| **Sent:** | Thursday, August 24, 2017 1:43 PM |
| **To:** | Dave Barnes |
| **Cc:** | Aaron Waxler |
| **Subject:** | Re: turn of the North Forty consulting agreement |
| | |
| **Sensitivity:** | Confidential |

Yes.  Let me figure out how to get that to you.

On Aug 24, 2017, at 12:39 PM, Dave Barnes <dave.barnes@northfortyconsulting.com> wrote:

> Hi Denise,
>
> Thanks for this.
>
> Aaron is out of pocket today.
>
> Glad that ██ won't be an issue.
>
> Concerning the below-proposed licensing revenue breakdown, are you able to provide some insight into BDIP's ████████████████████████████████████ ██████████████████████████
>
> Thx!
> Dave

---

**From:** Denise De Mory [mailto:ddemory@bdiplaw.com]
**Sent:** Thursday, August 24, 2017 1:02 PM
**To:** Aaron Waxler <aaron.waxler@northfortyconsulting.com>
**Cc:** 'Dave Barnes' <dave.barnes@northfortyconsulting.com>
**Subject:** Re: turn of the North Forty consulting agreement

Aaron,

I had a great call with Harris yesterday, and I no longer think ██ is an issue.  They are excited to have you guys on board, and we are working on planning a meeting for late September or early October in Melbourne and would like for one or both of you to be there.

One other issue.  Henry owns this relationship, and after our call with Harris yesterday ██████████████
████████████████████████████████████
████████████████████████████████
██████████████████████████████████████
██████████████████████████████
██████████████████████████

1



Let me know if this works for you.  If not, propose an alternative that you think meets the objectives above.  And if you can make this change in the agreement, I think we will be good to go!  We should set up a call next week so we can all share what we've been doing.

Excited to get going.

Denise

Denise M. De Mory
Managing Partner
<image001.png>
701 El Camino Real
Redwood City, CA  94063
(650) 351-7241
www.bdiplaw.com

Confidentiality Note: This e-mail message and any attachments to it are intended only for the named recipients and may contain legally privileged and/or confidential information. If you are not one of the intended recipients, do not duplicate or forward this e-mail message.

---

**From:** Aaron Waxler <aaron.waxler@northfortyconsulting.com>
**Date:** Monday, August 21, 2017 at 3:11 PM
**To:** Denise De Mory <ddemory@bdiplaw.com>, Dino Hadzibegovic <dhadzibegovic@bdiplaw.com>, Craig Allison <callison@bdiplaw.com>
**Cc:** 'Dave Barnes' <dave.barnes@northfortyconsulting.com>
**Subject:** turn of the North Forty consulting agreement

Denise,

We are super close.  Accepted almost all changes and really only need to discuss a bit on ██ Thanks for getting this back to us and we are open to talk at your convenience.

Yours,

Aaron Waxler
North Forty Consulting, LLC
(914) 860-4296

# Exhibit D

**Verizon** 11:47 AM 95%

**DD**

**Denise** ›

**Wed, Oct 23**, 3:49 PM

**Denise, what is** ▬▬▬▬▬▬ **Do you really want to sell to acacia?**

I do not want to sell to Acacia. ▬▬▬▬

iMessage

DD

**Denise** ›

I do not want to sell to Acacia. ███ ███████████ ████ I am on a flight that I booked three hours ago dealing with a family emergency. I can check later but I am almost certain it is the same.

It is not about wanti

iMessage

**DD**

**Denise** ›

It is not about wanting to sell. Mitch needs to get a sense of the potential market for us to really get this going - or not. I know you have invested a lot.



won't talk about the Huawei investment.

iMessage

DD

Denise ›

won't talk about the Huawei investment.

So I actually think this helps us test interest and commitment in some ways.

Clear Mitch is keen on  either RPX or sell.  Right now my preference would be a hybrid scenario

Where we get some

iMessage

a hybrid scenario

Where we get some $$ but can keep going

Delivered



# Exhibit E

| | |
|---|---|
| **From:** | Dave Barnes <dave.barnes@northfortyconsulting.com> |
| **Sent:** | Saturday, January 18, 2020 10:01 AM |
| **To:** | 'Denise De Mory' |
| **Subject:** | RE: North Forty Fees |
| | |
| **Sensitivity:** | Confidential |

Denise,

No offense intended, just clarifying what I was trying to say in the call, which clarifying, from your response, was needed.  Noting my reference to "may" pertains more to my recollection of why it was used in the first place (as opposed to, e.g., something like "shall").  ███████████████████████████████████████ ████████████████████████████████████████████████████████████

I don't think we disagree as to whether you can elect the optional reimbursement of the cumulative ███████████ ███████████████████████████████████████████████████████████ ██████████████████████████

From your last email to Aaron, it looks like any amendment will need to address the ████████████████   If agreeable, can you include a proposal to address this issue along with your proposal to address the Huawei issue.

I too will continue to work in good faith toward a fair and equitable resolution.

---

**From:** Denise De Mory <ddemory@bdiplaw.com>
**Sent:** Thursday, January 16, 2020 3:02 PM
**To:** Dave Barnes <dave.barnes@northfortyconsulting.com>
**Subject:** Re: North Forty Fees

Dave,

This type of posturing is not helpful.

On the call, you first indicated that we had ████████████████   That was wrong.

Later, you definitively asserted that only the ████████████████████████████████████████████ ████████████   That was wrong.

Now you are focusing on "optional" or "may." So let me ask: under what scenario does the "option" come into play, or under what circumstances would it not be exercised?  I think a much more fair reading  "may" in the operative phrase is that there ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████.

Finally, on the payments, I attach what I believe is the last communication on the ██████████████████████

But in any event, these are small issues in view of the economics of concern.  I will continue to work on a proposal and continue to work in good faith toward a fair and equitable resolution.  We will talk again soon.

Best regards,

1

Denise

**From:** Dave Barnes <dave.barnes@northfortyconsulting.com>
**Date:** Thursday, January 16, 2020 at 12:09 PM
**To:** Denise De Mory <ddemory@bdiplaw.com>
**Subject:** RE: North Forty Fees

[EXTERNAL]

Thanks Denise!

I really hope this is the most significant issue (*cautiously reserving judgement until I see your proposal*), I think we are not far off as it pertains to ███████████████████████████████████████████
████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

██████████████████████████████████████████████.

████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████

Dave

**From:** Denise De Mory <ddemory@bdiplaw.com>
**Sent:** Thursday, January 16, 2020 11:48 AM
**To:** Dave Barnes <dave.barnes@northfortyconsulting.com>
**Subject:** North Forty Fees

Dave,

I am trying to understand your read of the agreement re the offset of fees.  Without conceding anything, I understand your point about the payments for 2019.  But I am struggling to see your read regarding the first six months in the agreement.   This is what I believe is the relevant term:



I agree this is the most significant issue, but I want to get to common ground on points where we can before I make any proposal.

Denise