SINGER CASHMAN LLP
  Benjamin L. Singer (Bar No. 264295)
  bsinger@singercashman.com
  Walter C. Pfeffer (Bar No. 289421)
  wpfeffer@singercashman.com
505 Montgomery Street, Suite 1100
San Francisco, California 94111
Telephone:    (415) 500-6080
Facsimile:    (415) 500-6080

*Attorneys for Bunsow De Mory LLP*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISON**

| | |
|---|---|
| BUNSOW DE MORY LLP, a California limited liability partnership,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>NORTH FORTY CONSULTING LLC, a Delaware limited liability company,<br><br>    Defendant and Counterclaimant. | CASE NO. 3:20-CV-04997<br><br>**REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Filing Date:   July 24, 2020<br>Trial Date:    Dec. 6, 2021<br><br>Hearing Date: January 7, 2021<br>Hearing Time: 9:00 a.m.<br>Courtroom:    E, 15th Floor<br>Judge:        Hon. Jacqueline Corley, M.J. |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## I. INTRODUCTION

The Consulting Agreement[1] is an integrated written contract negotiated by attorneys on both sides. The terms are susceptible to only one reasonable interpretation, making the agreement unambiguous. When the agreement is applied to the facts admitted by Defendant North Forty LLC ("North Forty") in its pleadings, Plaintiff law firm Bunsow De Mory LLP ("BDIP) is entitled to judgment on the pleadings on its first and second claims for declaratory judgment.

BDIP's Motion[2] is straightforward as to BDIP's first claim for declaratory relief. It asks the Court to enter Judgment because the closed pleadings in this action establish as matter of law that: (1) ███████████████████████████████████████████████████████████████████ and (2) when Comcast entered into the relevant agreement, it was a party to litigation. Mot. at 5-7. North Forty's Opposition[3] does not contest these facts, nor does it assert any fact disputes. Opp. at 7-11. Rather, North Forty's effort to avoid judgment rests on its bid to have the Court rewrite the Agreement in violation of well-established law. The Court should decline to do so.

BDIP is also entitled to a judgment that it does not owe North Forty a success fee on the Acacia deal. BDIP's termination of the Consulting Agreement became effective before Harris and Acacia executed the relevant patent sale agreement. North Forty does not dispute these dispositive facts. Instead, North Forty offers only unsupported contract misrepresentations and immaterial fact disputes. The Court should grant the Motion as to BDIP's second declaratory judgment claim.

Finally, the Court should not consider the extrinsic evidence North Forty improperly put before the Court, and it should not allow North Forty to further amend its pleadings. Any such amendment would be futile because North Forty cannot, as a matter of law, use extrinsic evidence to alter the meaning of unambiguous contract terms and even if it could, North Forty's cherry-picked pre-Agreement communications do not support its remarkable interpretations. With an unambiguous Agreement and undisputed facts, the Court should grant BDIP's Motion now.

---

[1] As used herein, "Consulting Agreement" and "Agreement" refer to the September 1, 2017 Consulting Agreement between BDIP and North Forty, which is attached as Exhibit A to the Declaration of Walter Pfeffer in Support of BDIP's Motion for Judgment on the Pleadings (Dkt. 34-6) ("Pfeffer Decl.").
[2] As used herein, "Motion" and "Mot." refer to BDIP's Motion for Judgment on the Pleadings (Dkt. 34-4).
[3] As used herein, "Opposition" and "Opp." refer to North Forty Consulting LLC's Opposition to Bunsow De Mory LLP's Motion for Judgment on the Pleadings (Dkt. 40-4).

## II. LEGAL STANDARD

### A. Contract Interpretation Is A Matter Of Law

Under California law, contract interpretation is a question of law for courts. *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995); *Atel Fin. Corp. v. Quaker Coal Co.*, 321 F.3d 924, 925–26 (9th Cir. 2003). As such, the resolution of a dispute over the interpretation of a contract is appropriate on a motion for judgment on the pleadings. *See, e.g., RLI Insurance Co. v. City of Visalia*, 297 F. Supp. 3d 1038 (E.D. Cal. 2018); *Hendesi v. Clear Channel Outdoor, Inc.*, No. 17-CV-02175-JAM-DB, 2018 WL 3054793 (E.D. Cal. Mar. 12, 2018).

### B. Unambiguous Contract Language Is Afforded Its Ordinary Meaning

The goal of contract interpretation is to give effect to the mutual intention of the parties. Cal. Civ. Code § 1636. "When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible." *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.,* 109 Cal. App. 4th 944, 955 (2003); s*ee also* Cal. Civil Code § 1639. "The words of a contract are to be understood in their ordinary and popular sense…." Civ. Code, § 1644. A party's internal belief that a contract means one thing when the written words unambiguously mean another is irrelevant. *Lightbourne v. Printroom Inc.*, 122 F. Supp. 3d 942, 948 (C.D. Cal. 2015).

In interpreting a contract, California courts start with the question of whether the contract is ambiguous. *See Han v. Mobil Oil Corp.,* 73 F.3d 872, 877 (9th Cir. 1995). If the contract is not ambiguous, the court construes it as a matter of law without resort to extrinsic evidence. *Thompson v. Asimos*, 6 Cal. App. 5th 970, 987 (2016). A contract term is ambiguous only when it is susceptible to more than one *reasonable* interpretation. *MacKinnon v. Truck Ins. Exchange,* 31 Cal. 4th 635, 647 (2003). Ambiguity cannot be based on a strained interpretation of the contract's terms. *McKee v. State Farm Fire & Cas. Co.,* 145 Cal.App.3d 772, 775-76 (1983); *Colonies Partners LP v. County of San Bernadino*, No. EDCV-18-420-JGB, 2019 WL 8621438 at *5 (C.D. Cal. Nov. 14, 2019).

### C. Materials Outside The Pleadings May Not Be Considered On A Rule 12(c) Motion

The Court cannot consider North Forty's handful of cherry-picked pre-Agreement communications because they are neither incorporated into the pleadings nor subject to judicial notice. *E.g., Gerow v. Washington*, 383 Fed. Appx. 677, 678-79 (9th Cir. 2010) ("[A] district court

1 may not consider materials outside the pleadings in adjudicating a Rule 12(c) motion."); *FedEx Office & Print Servs., Inc. v. Continental Casualty Co.*, No. CV 20-4799, 2020 WL 6804455, at *7 (C.D. Cal. Oct. 20, 2020) ("[I]n a motion for judgment on the pleadings, the Court … cannot consider extrinsic evidence."); *Doe v. El Dorado Union High School Dist.*, No. 2:18-cv-02576, 2020 WL 1307190, at *2 (E.D. Cal. Mar. 19, 2020) ("In deciding a motion for judgment on the pleadings, the Court is generally limited to the pleadings and may not consider extrinsic evidence.")

## III. ARGUMENT

### A. The Court Should Enter Judgment In BDIP's Favor On Its First Declaratory Judgment Claim Because Comcast Was A ▮▮▮▮▮▮▮▮

It is undisputed on the face of the pleadings that Comcast filed a lawsuit relating to the Harris patents in the District of Delaware and that the settlement underlying the disputed success fee resolved that lawsuit. ▮▮▮▮▮▮▮▮

Relying on unrelated portions of the Agreement and improper extrinsic evidence, North Forty asks the Court to rewrite the Agreement and interpret ▮▮▮▮ to cover only lawsuits that are both filed by BDIP and for which BDIP received third party financing. Opp. Br. at 10. North Forty's specious overreach is unsurprising; nothing less would leave room for its frivolous position that Comcast was somehow not ▮▮▮▮▮▮▮▮. As set forth below, North Forty loses because the term ▮▮▮▮ is neither ambiguous nor susceptible to North Forty's remarkable "interpretation."

### 1. ▮▮▮▮▮▮ unambiguously refers to an entity involved in a lawsuit.

The disputed term ▮▮▮▮ is susceptible to only a single meaning. Courts have consistently found that the definition of ▮▮▮▮ refers to any dispute before a court of law, otherwise known as a lawsuit. *E.g.*, *SDR Capital Mgmt., Inc. v. American Intern. Specialty Lines Ins. Co.*, 320 F. Supp. 2d 1043, 1047 (S.D. Cal. 2004) ("Here, the Court finds that 'litigation' is unambiguous for several reasons. First, the Oxford English Dictionary ('OED') defines 'litigation' as '[t]he action or process of carrying on a suit in law or equity; legal proceedings…."); *Khan v. Shim*, 7 Cal. App. 5th 49, 59–62 (Cal. Ct. App. 2016) (holding that contract clause addressing "litigation"

included any claims brought between the parties); *Liftech Consultants Inc. v. Samsung Shipbuilding & Heavy Indus., Ltd.*, No. C 10-2976, 2010 WL 4510905, at *3 (N.D. Cal. Nov. 2, 2010) (holding that the "plain and ordinary meaning" of "litigation" is "the process of carrying out a lawsuit" or "a lawsuit itself"). This interpretation of ███████ is also borne out by both standard and legal dictionaries. *See e.g.*, Merriam-Webster Dictionary (Online, 2020) (defining "litigation" as "the act, process, or practice of settling a dispute in a court of law" and noting that "litigation" has retained the same definition since the word was coined in 1612); Black's Law Dictionary (11th ed. 2019) (defining "litigation" as "the process of carrying on a lawsuit").

The term ███████ is not ambiguous. As such, it should be must be understood in its ordinary and plain sense, which unmistakably covers the lawsuit between Harris and Comcast. *Cf.*, Cal. Civ. Code §§ 1638–39; *Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th Cir. 2014).

**2. North Forty's interpretation of ███████ is not reasonable.**

In its Amended Answer and Counterclaims, North Forty claimed that the phrase ███████ referred only to affirmative patent litigation filed by BDIP on behalf of its client, based on some alleged custom and practice in the industry. Am. Countercl. ¶ 40. North Forty has now abandoned the "custom and practice" argument in favor of an even more limited definition of ███████ based on a contorted and confusing construction of the Consulting Agreement. In its Opposition, North Forty now argues that an entity is only ███████ if two conditions are met: (1) BDIP files affirmative patent infringement litigation; and (2) BDIP obtains litigation funding for that action. Opp. Br. at 4, 5, 10. North Forty posits that its interpretation of the disputed phrase is required by the words of the phrase itself, the remaining language of the Agreement, and the extrinsic evidence. North Forty is wrong on all three fronts.

First, the language of the disputed phrase itself—███████—is incompatible with North Forty's interpretation. Curiously, North Forty's Opposition argues that the parties are sophisticated and if they intended the phrase ███████ to mean "any litigation involving the patents", they could have included language to that effect. Opp. at 9. *But the parties did exactly that*. The unqualified phrase ███████ on its face covers *any* litigation. Indeed, BDIP is only asking the Court to give the disputed language its ordinary meaning. The same cannot be said of


1  North Forty, however.  North Forty's interpretation requires rewriting the simple phrase ▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
3  ▮▮▮  It is inconceivable that these sophisticated parties would leave the term ▮▮▮▮ wholly
4  unqualified if they had intended it to be extraordinarily limited as North Forty suggests.
5      Second, North Forty's argument that the Consulting Agreement as a whole mandates adopting
6  its artificially limited interpretation has no merit.  North Forty argues that the term ▮▮▮▮ must
7  be limited to an offensive action because nothing else could advance the goal of monetizing the
8  patents.  Opp. Br. at 4-5. *Yet that is exactly what happened in this case*. North Forty admits that
9  "Comcast filed a declaratory judgment action against Harris.  Countercl. ¶ 33; Am. Countercl. ¶ 37;
10 *see also* Compl. ¶ 31; Request for Judicial Notice, Ex. B. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Compl. ¶ 45; Am.
13 Countercl. ¶ 39. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
14 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
15 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
17 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
18     Similarly, North Forty's argument that ▮▮▮▮▮▮▮▮ requires that BDIP received
19 litigation funding finds no support in the Consulting Agreement. Opp. Br. at 4-5.  To make this
20 argument, North Forty claims that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
21 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
22 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
23 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
24 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
25 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
26 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
27 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

1 ████████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████████

3 ████████████████████████████████████████████████████████████

4       Finally, as set forth above, North Forty's attempt to rely on extrinsic evidence is improper as a matter of law.  The Court cannot consider North Forty's handful of cherry-picked pre-Agreement communications because they are neither incorporated into the pleadings nor subject to judicial notice.  But separately, ████████████████████████████████████ and extrinsic evidence cannot be used to contradict the unambiguous terms of an integrated written contract. *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1125-26 (2008).

      Accordingly, the Court should grant the Motion as to BDIP's first claim for declaratory relief.

**B. The Court Should Enter Judgment In BDIP's Favor On Its Second Declaratory Judgment Claim Because The Relevant Harris-Acacia Deal Was Post-Termination**

      Through their pleadings, BDIP and North Forty agree on the only facts that are material to the dispute over whether North Forty is owed a success fee on the Harris-Acacia deal.  The parties agree that Harris and Acacia entered into a patent sale agreement on February 21, 2020 but that Acacia backed out of the deal in March 2020, before the end of the 30-day due diligence period.  Compl. ¶¶ 36, 41; Am. Countercl. ¶¶ 46, 49. The parties also agree that the Consulting Agreement terminated on March 27, 2020.  Compl. ¶ 38; North Forty's Answer (Dkt. 18-1) ("Answer") ¶ 38; Am. Countercl. ¶ 47; Agmt. § 7.1.  Thereafter, as pled by North Forty, Harris and Acacia agreed to a new patent sale agreement "[o]n or about April 20, 2020."  Am. Countercl. ¶ 50; *see also* Compl. ¶ 43. These facts alone are sufficient to support a declaratory judgment that BDIP does not owe North Forty any success fee on the Harris-Acacia deal.

      North Forty claims that BDIP's obligation to pay it a success fee on the Harris-Acacia agreement arose on February 21, 2020, the date the first Harris-Acacia patent sale agreement was executed.  Opp. Br. at 11.  But, as North Forty admits, this first contract was terminated before the end of the diligence period and before any payments were made.  Compl. ¶¶ 36, 41; Am. Countercl. ¶¶ 46, 49.  Because no payments were made under the first Harris-Acacia agreement, ████

████████████████████████████████████████████████████

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The second Harris-Acacia deal was an entirely separate contract from the first, as North Forty itself has pled. Am. Countercl. ¶ 50; *see also* Compl. ¶ 43.  The parties agree that the Consulting Agreement terminated before the second Harris-Acacia contract—▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓—was executed.  *See* Compl. ¶¶ 38, 43; Answer ¶ 38; Am. Countercl. ¶¶ 47, 50; Agmt. § 7.1.  The termination of the Consulting Agreement discharged all obligations of the parties.  *See* Cal. Comm. Code § 2106(3); 1 Witkin, Summary Cal. L. 11th Contracts § 955 (2020).  Therefore, no obligation to pay North Forty could have arisen from the second Harris-Acacia deal, which did not exist prior to the termination of the Consulting Agreement.

      North Forty's remaining arguments are irrelevant.  First, North Forty states that a dispute existed between BDIP and North Forty regarding whether North Forty would be entitled to a success fee under the Consulting Agreement at all if there were a sale of the patents. Opp. Br. at 12.  BDIP does not concede that there was any such obligation, but that issue is moot because no such patent sale occurred while the Consulting Agreement was in force.  *See* Compl. ¶¶ 38, 43; Answer ¶ 38; Am. Countercl. ¶¶ 47, 50.

      Next, North Forty appears to argue that there is a material fact dispute with respect to BDIP's motive for terminating the Consulting Agreement. Opp. Br. at 12.  As an initial matter, North Forty's allegation of bad faith are unfounded.  BDIP could not have terminated the Agreement to avoid paying North Forty on the pending sale to Acacia because had that deal closed as expected, it would have done so *before* the termination was effective. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
Moreover, when North Forty received BDIP's termination notice, its response was that "termination makes sense." Compl. ¶ 53.  Apparently North Forth only decided the termination was in bad faith when it had to oppose BDIP's Motion.

      In any event, BDIP's motive is not material to the validity of the termination. ▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ and North Forty has explicitly admitted that BDIP's termination was valid.  Compl. ¶ 38; Answer ¶ 38. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Finally, North Forty asserts that the second Harris-Acacia patent sale is relevant to other claims and affirmative defenses in this action. Opp. Br. at 13. North Forty makes no attempt, however, to explain how this assertion alters North Forty's own pleadings, which confirm all material facts necessary to conclude that North Forty is not owed any payment under the second Harris-Acacia deal.

BDIP has established and North Forty has admitted that the second Harris-Acacia deal was executed after the Consulting Agreement was terminated. BDIP is therefore entitled to a declaratory judgment in its favor on its second claim for relief.

### C. North Forty Should Not Be Permitted To Amend

North Forty's Opposition asks the Court to "grant North Forty leave to amend its Counterclaims to set forth more fully facts and documents to support its claims." Opp. at 1. North Forty apparently wants to amend its pleading to add the extrinsic evidence it submitted with its Opposition despite presumably being aware that the Court could not consider such materials in adjudicating BDIP's Motion under Rule 12(c). North Forty should not be permitted to do so because any such amendment would be futile.

Leave to amend is determined using the same criteria for both a 12(b) motion and a 12(c) motion: leave to amend should generally be liberally granted, but should be denied where amendment would be futile. *Ponten Spirit Holding AB v. Automile, Inc.*, No. 18-cv-05096, 2019 WL 7819475, at *6 (N.D. Cal. Jan. 9, 2019) ("Leave to amend may be denied on a motion for judgment on the pleadings 'where a plaintiff's proposed amendments would fail to cure the pleading deficiencies and amendment would be futile.'"); *Finney v. Ford Motor Co.*, No. 17-cv-06182, 2019 WL 79033, at *5 (N.D. Cal. Jan. 2, 2019) ("[T]he Court denies Finney's request for additional leave to amend because it concludes that further leave would be futile."); *Pacific West Group, Inc. v. Real Time Solutions, Inc.*, 321 Fed. Appx. 566, 569 (9th Cir. 2008) (affirming denial of leave to amend for futility and noting that 12(b) and 12(c) standards for leave to amend are identical).

1   First, amendment would be futile because extrinsic evidence cannot be used to contradict the
2   unambiguous terms of an integrated written contract. *Wolf v. Walt Disney Pictures & Television*, 162
3   Cal. App. 4th 1107, 1125-26 (2008).  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
4   ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆  Thus, North
5   Forty's extrinsic evidence could not be considered even after amendment.

6   Second, even assuming *arguendo* that the Court were inclined consider North Forty's
7   proffered extrinsic evidence, amendment would still be futile because those materials do not support
8   North Forty's strained interpretation of the Consulting Agreement.  Rather, they support BDIP's
9   straightforward interpretation. North Forty submitted three emails between BDIP and North Forty
10  from the time period when the parties were negotiating the Consulting Agreement.  In these emails,
11  the parties consistently use the term ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
12  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Declaration of Dave Barnes in Support of North Forty's
13  Opposition (Dkt. 40-4) ("Barnes Decl."), Exs. A, B, C. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
14  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
15  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See id.*
16  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
17  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
18  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆
19  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ *See* Compl. ¶ 45; Am. Countercl. ¶ 39.
20  Because North Forty's soft licensing efforts resulted in litigation with Comcast, ▆▆▆▆▆▆▆▆▆
21  ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ North Forty's extrinsic evidence thus confirms the plain meaning
22  of Section 3.1(b) of the Consulting Agreement.

23  Substantial time, effort, and resources have already gone into combating North Forty's
24  frivolous positions.  There is nothing premature about BDIP's Motion and there is no inequity
25  denying leave to amend.  The materials at issue have always been in North Forty's possession and
26  there is no reason they could not have included them in their original Counterclaims or the First
27  Amended Counterclaims that they filed to cure other deficiencies BDIP brought to their attention.
28

1  BDIP therefore respectfully submits that the Court should grant this Motion without leave for North Forty to amend its pleadings.

## IV. CONCLUSION

For the foregoing reasons, BDIP respectfully requests the Court enter judgment on the pleadings on BDIP's first and second claim for relief.

Date: December 21, 2020          Respectfully submitted,

SINGER CASHMAN LLP

By: _____
Benjamin L. Singer
Walter C. Pfeffer
*Attorneys for Bunsow De Mory LLP*

