UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BUNSOW DE MORY LLP,<br><br>       Plaintiff,<br><br>   v.<br><br>NORTH FORTY CONSULTING LLC,<br><br>       Defendant. | Case No. 20-cv-04997-JSC<br><br>**ORDER RE: PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS & ADMINISTRATIVE MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 34, 35, 40, 44 |

Before the Court is Bunsow De Mory LLP's ("BDIP's") motion for judgment on the pleadings, as well as the parties' administrative motions to file under seal portions of the motion, opposition, and reply. (Dkt. Nos. 34, 35, 40, 44.)[1] This case arises from a contract dispute between BDIP, a law firm that assists its clients in monetizing patent portfolios, and North Forty Consulting LLC ("North Forty"), a company that provides consulting services for monetizing patents.[2] After careful consideration of the parties' briefing, and having had the benefit of oral argument on January 14, 2021, the Court GRANTS in part and DENIES in part BDIP's motion for judgment on the pleadings, and GRANTS in part and DENIES in part the parties' administrative motions to file under seal.

## BACKGROUND

### I. Complaint & Counterclaim Allegations

BDIP is a law firm with experience in patent licensing and litigation, and North Forty, established in early 2017 by David Barnes and Aaron Wexler, provides consulting services for

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generate page numbers placed at the top of the documents.
[2] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 8, 16.)

monetizing patents. In or around January 2017, Mr. Barnes and Mr. Wexler contacted BDIP regarding any possible projects to help launch North Forty. In or around May 2017, BDIP indicated it may be able to hire North Forty to assist BDIP, and that North Forty could provide consulting work for its client, L3Harris Technologies ("Harris"). BDIP's work for Harris entailed identifying Harris patents to assert against possible entities infringing on Harris's patents, assembling evidence regarding those entities' infringement, and developing a patent enforcement strategy. On September 1, 2017, the parties entered into a consulting agreement (the "Consulting Agreement" or "Agreement") under which North Forty would provide consulting services regarding patent mining, validity, infringement positions, evidence of use development, claim chart preparation and review, and identification of potential licensees and market opportunities in support of BDIP's efforts. In exchange for these services, North Forty received a ▬▬▬ ▬▬▬ and, in other specified instances, a portion of BDIP's ▬▬▬ for work BDIP performed on behalf of Harris and BDIP's other clients.

In March 2018, North Forty sent initial letters to potential licensees in an effort to secure potential patent licensing deals without litigation. Acacia Research Corporation ("Acacia") contacted Harris in or around October 2019 about purchasing Harris's patent portfolio. Comcast Corporation ("Comcast") filed a declaratory judgment action in December 2019 against Harris in the United States District Court for the District of Delaware (the "Comcast Litigation"). ▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ On or about February 21, 2020, Harris and Acacia entered into an agreement under which Acacia was to purchase Harris patents. In March 2020, Acacia pulled out of the parties' patent purchase agreement and the deal did not close.

BDIP provided North Forty with notice of its termination of the Consulting Agreement on February 27, 2020. North Forty affirmed the Agreement's termination and noted that it was appropriate. The Agreement required 30 days' notice of its termination, and thus became effective March 27, 2020. The month following BDIP's notice of termination Acacia determined not to proceed with the purchase of the Harris patents. Following the collapse of this initial sale of

2

Harris's patents, Acacia began a new negotiation regarding the patents' sale with Harris and, on April 20, 2020, Harris and Acacia executed a new purchase agreement for Harris's patents.

Following the Consulting Agreement's termination, a dispute arose between BDIP and North Forty regarding North Forty's entitlement to ▮▮▮▮▮ in the event that Harris successfully sold its patents to Acacia, as it did on April 20, 2020, and the amount to which North Forty was entitled under the Consulting Agreement regarding the executed ▮▮▮▮▮.

## II. Procedural History

BDIP filed its complaint on July 24, 2020 against North Forty on diversity grounds, bringing claims for declaratory judgment, breach of fiduciary duty, breach of contract, and other state law claims. North Forty filed and later amended its answer and counterclaims, asserting various defenses and bringing various state law claims against BDIP. BDIP answered North Forty's first amended counterclaim, and on November 19, 2020, filed the instant motion for judgment on the pleadings. (Dkt. No. 35.) The motion is fully briefed, and the Court held oral argument on January 14, 2020.

## DISCUSSION

### I. Rule 12(c) Motion

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Judgment on the pleadings is proper when "taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law." *Ventress v. Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir. 2007) (internal quotation marks and citation omitted). *See also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("All allegations of fact by the party opposing the motion are accepted as true.") (citation omitted); *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230-31 (9th Cir. 1989) (considering defendants' answer on plaintiff's motion for judgment on the pleadings); *Qwest Commc'ns Corp. v. City of Berkeley*, 208 F.R.D. 288, 291 (N.D. Cal. 2002) (considering defendant's answer on plaintiff's motion for judgment on the pleadings and stating that "[u]ncontested allegations to which the other party had an opportunity to respond are taken as

3

true") (citing *Flora v. Home Fed'l Sav. & Loan Ass'n*, 685 F.2d 209, 211 (7th Cir.1982)). A court need not, however, accept conclusory allegations as true. *See McGlinchy*, 845 F.2d at 810. "Judgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990). In considering a Rule 12(c) motion, a court must limit its review to "facts that are contained in materials of which the court may take judicial notice." *Heliotrope Gen., Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir. 1999) (internal quotation marks and citations omitted).

BDIP moves for judgment on the pleadings on BDIP's first and second claims for declaratory relief the grounds that: (1) the Comcast Litigation is ▮▮▮▮ as defined in the Consulting Agreement and therefore North Forty is entitled to a ▮▮▮, not ▮▮▮, ▮▮▮▮ regarding the ▮▮▮▮ execution; and (2) BDIP's has no obligation to pay North Forty regarding the execution of Harris's sale of patents to Acacia on April 20, 2020 after the Consulting Agreement was terminated. The Court considers these issues in turn.

**A. Consulting Agreement & ▮▮▮▮**

BDIP argues that the Consulting Agreement's plain terms state that North Forty receives a ▮▮▮▮—rather than the ▮▮▮▮ of BDIP's ▮▮▮▮ arising from the Comcast Litigation and the execution of the ▮▮▮▮.[3] The Court agrees.

The disputed phrase come from ▮▮▮ of the Consulting Agreement:

---

[3] Harris was a litigant in the declaratory judgment action Comcast filed in the District of Delaware. (Dkt. No. 28-4 at 15 ¶ 37) The Court also takes judicial notice of the public docket sheet from *Comcast Cable Communications, LLC v. L3Harris Technologies, Inc.*, Case No. 1:19-cv-02245 in the District of Delaware, submitted in BDIP's Request for Judicial Notice, demonstrating that Harris was a party to the Comcast Litigation. (Dkt. Nos. 35-4 & 35-3.) *See Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("[Courts] may take judicial notice of undisputed matters of public record . . . including documents on file in federal or state courts.") (internal citation omitted). *See also White v. Martel*, 601 F.3d 882, 885 (9th Cir. 2010); *Sharp v. Sherman*, No. 2:20-cv-09839 GW (KES), 2020 WL 6507324, at *1 n.1 (C.D. Cal. Nov. 5, 2020) ("Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the docket sheets and related documents in *Sharp I*.")

4

1
2
3

4   (Dkt. No. 34-6 at 4.)⁴

5   Under California law, a contract must be interpreted "as to give effect to the mutual intention of the parties as it existed at the time of contracting[.]" Cal. Civ. Code § 1636. The parties' intention "is to be ascertained from the writing alone, if possible[.]" Cal. Civ. Code § 1639; *see also Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003) ("We turn first to the language of the contract itself.") "When a dispute arises over the meaning of contract language, the first question to be decided is whether the language is reasonably susceptible" to more than one interpretation. *Cedars-Sinai Med. Ctr. v. Shewry*, 137 Cal. App. 4th 964, 979 (2006) (internal quotation marks and citations omitted). "If it is not, the case is over." *Id.*

▮▮▮▮ as used in ▮▮▮ of the Consulting Agreement means "the process of carrying on a lawsuit," or "a lawsuit itself." *See Black's Law Dictionary* (11th ed. 2019). The Comcast Litigation was a lawsuit Comcast filed against Harris in the District of Delaware. (*See* Dkt. Nos. 35-3, 28-4 at 15 ¶ 37.) Section ▮▮▮ requires that a BDIP client and ▮▮▮▮▮ be ▮▮▮▮▮ whereas ▮▮▮ permits BDIP to recover a ▮▮▮▮▮—and North Forty to recover a ▮▮▮▮▮ on that interest—where a BDIP client and ▮▮▮▮▮ are ▮▮▮▮▮ (Dkt. No. 34-6 at 4.) Therefore, because Harris and Comcast were ▮▮▮▮▮ in the Comcast Litigation, ▮▮▮ of the Consulting Agreement governs the payment of North Forty's ▮▮▮▮.

This interpretation of ▮▮▮▮ is supported by other cases: several courts have similarly determined that the definition of ▮▮▮▮ when used in contracts is unambiguous. *See, e.g., SDR Capital Mgmt., Inc. v. Am. Int'l Specialty Lines Ins. Co.*, 320 F. Supp. 2d 1043, 1047 (S.D.

---

⁴ The Court may consider the Consulting Agreement's content under the incorporation by reference doctrine. *Biltmore Assocs., LLC v. Twin City Fire Ins. Co.*, 572 F.3d 663, 665 n.1 (9th Cir. 2009) ("A court may consider documents, such as the insurance policies, that are incorporated by reference into the complaint."); *see also Heliotrope Gen., Inc.*, 189 F.3d at 981 n.18.

5

Cal. 2004) (using secondary sources' definitions of ▮ in determining that ▮ is unambiguous for several reasons) (citing VIII Oxford English Dictionary 1037 (2d ed.1989) & *Black's Law Dictionary* 944 (7th ed.1999)); *Liftech Consultants Inc. v. Samsung Shipbuilding & Heavy Indus., Ltd*., No. C 10-2976 SBA, 2010 WL 4510905, at *3 (N.D. Cal. Nov. 2, 2010) (determining that ▮ in its "plain and ordinary meaning" is "the process of carrying on a lawsuit" or "a lawsuit itself") (citing *Black's Law Dictionary*, 386 (9th ed.2009)); *Khan v. Shim*, 7 Cal. App. 5th 49, 61 (2016) (holding that fee provision governing "any ▮ concerning the parties' contract covered the plaintiff's tort claims and the claims "easily fit within the fee provision's scope").  The Court finds these interpretations persuasive and support its determination that ▮ as used in ▮ of the Consulting Agreement means "the process of carrying on a lawsuit," or "a lawsuit itself." *See Black's Law Dictionary* (11th ed. 2019).

North Forty contends that the Consulting Agreement's definition of ▮ is susceptible to more than one interpretation, and that it is properly—and more narrowly—defined as "offensive" patent ▮ filed by BDIP on behalf of its ▮ for which BDIP received ▮ North Forty argues that while negotiating the Consulting Agreement the parties intended ▮ to be defined as such, and that extrinsic evidence, as well as taking the Agreement as a whole, support its interpretation of ▮ Not so.

First, California recognizes the objective theory of contracts—it is parties' "objective intent," as "evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation." *Cedars-Sinai*, 137 Cal. App. 4th at 980 (internal quotation marks and citations omitted); *see also Block v. eBay, Inc*., 747 F.3d 1135, 1138 (9th Cir. 2014) ("It is not the parties' subjective intent that matters, but rather their objective intent, as evidenced by the words of the contract.")  (internal quotation marks and citations omitted).  North Forty selectively quotes *Cedars-Sinai* as standing for the proposition that "whether [a] contract is reasonably susceptible to a party's interpretation can be determined from the [contract's language] *or* from extrinsic evidence of the parties' intent[;]" however, *Cedars-Sinai* makes clear that a court may turn to extrinsic evidence *only* after determining, as a "first question[,]" whether a contractual provision is "reasonably susceptible" to more than one interpretation. *Cedars-Sinai*, 137 Cal.

6

App. 4th at 979-980 (internal quotation marks and citations omitted) (emphasis added).  "If [the language] is not, the case is over." *Id.* (citation omitted).  Here, ▮ is not reasonably susceptible to more than one interpretation because—as explained above—the phrase ▮ does not have "multiple meanings" that create an ambiguity, *Palmer v. Truck Ins. Exch.*, 21 Cal. 4th 1109, 1118 (1999) (citation omitted), and in light of the phrase's "clear and [un]absurd" meaning the Court must interpret the Consulting Agreement to make the phrase "operative, definite, reasonable, and capable of being carried into effect," *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 954 (2008) (internal quotation marks and citations omitted).  As such, ▮ as used in the Consulting Agreement is not "reasonably susceptible" to more than one interpretation, *Cedars-Sinai*, 137 Cal. App. 4th at 979-80; the Court will not create ambiguity based on a "strained . . . interpretation of the contract's terms[,]" *McKee v. State Farm Fire & Cas. Co.*, 145 Cal. App. 3d 772, 775-76 (1983).  Because ▮ as used in ▮ of the Consulting Agreement is "patently unsusceptible to the meaning [North Forty] urges," the extrinsic evidence it submits in support of its opposition "is of no moment here . . . and has no bearing on the Court's analysis." *Lightbourne v. Printroom Inc.*, 122 F. Supp. 3d 942, 948 (C.D. Cal. 2015).

Second, when interpreting a contract "the whole of a contract is to be taken together, so as to give effect to every part[.]"  Cal. Civ. Code § 1641.  North Forty argues that ▮ narrows ▮ of the Consulting Agreement.  ▮ reads:

[redacted block]

(Dkt. No. 34-6 at 5.)  In light of ▮ North Forty interprets ▮ to mean that BDIP's ▮ required that BDIP initiate ▮ on behalf of a client to ▮ (Dkt. No. 40-4 at 13.)  Put differently, unless BDIP affirmatively initiated an ▮ on behalf of a client to collect damages, then ▮ did not apply.  North Forty also reads ▮'s representation that BDIP had the authorization

7

1  to monetize patents on behalf of its clients ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
2  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ as meaning that, in order for § ▮▮▮▮▮▮▮'s definition of ▮▮▮▮▮▮▮ to apply,
3  BDIP must have received ▮▮▮▮▮▮ funding.  (Dkt. Nos. 40-4 at 14, 34-6 at 5.)
4        Incorrect.  While "each clause help[s] to interpret the other," Cal. Civ. Code § 1641, courts
5  interpret contracts with the aim to ensure that "all provisions . . . [are] give[n] effect," and to avoid
6  those where "part of the writing [is rendered] superfluous, useless or inexplicable[,]"  *Carson v.*
7  *Mercury Ins. Co*., 210 Cal. App. 4th 409, 420 (2012) (internal quotation marks and citations
8  omitted).  Here, interpreting ▮▮▮▮▮▮▮▮ in its unambiguous meaning, *see, e.g.*, Black's Law
9  Dictionary (11th ed. 2019), in ▮▮▮▮▮▮ does not render any clause or provision of ▮▮▮ regarding
10 clients' rights to sue or third-parties' ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—a ▮▮▮▮▮▮▮▮▮
11 ▮▮▮▮▮▮▮▮▮▮▮ made by BDIP—useless or inexplicable, *see Carson*, 210 Cal. App. 4th at 420.
12 Moreover, the ordinary meaning of ▮▮▮▮▮▮▮▮ covers the narrower definition North Forty urges
13 this Court adopt, whereas adopting North Forty's definition of ▮▮▮▮▮▮▮▮ through ▮▮▮▮
14 application would place inappropriate limitations on BDIP's ▮▮▮▮▮▮▮▮ activity under ▮▮▮▮▮▮
15 *See City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 68 Cal. App. 4th 445, 473
16 (1998), *as modified on denial of reh'g* (Jan. 6, 1999) ("Courts must interpret contractual language
17 in a manner which gives force and effect to *every* provision, and not in a way which renders some
18 clauses nugatory, inoperative or meaningless.") (citation omitted) (original emphasis).
19 Furthermore, ▮▮▮▮▮▮ representation that BDIP's right to monetize client's patents is subject to
20 ▮▮▮▮▮▮▮▮▮▮▮▮▮ third-party ▮▮▮▮▮▮▮▮▮▮ in the patents has nothing to do with third-party
21 ▮▮▮▮▮ for BDIP's future ▮▮▮▮▮▮▮▮.  (Dkt. No. 34-6 at 5.) (emphasis added.)[5]
22       Accordingly, when taking the Consulting Agreement as a whole, *see* Cal. Civ. Code §
23 1641, no sections limit ▮▮▮▮▮▮▮'s definition of ▮▮▮▮▮▮▮▮  Therefore, the Comcast Litigation is
24 ▮▮▮▮▮▮▮▮▮▮ as defined by its plain and ordinary meaning, *see Liftech Consultants*, 2010 WL
25 4510905, at *3, and used in the Consulting Agreement.

---

[5] In fact, BDIP's litigation activity in the Comcast Litigation achieved precisely the outcome North Forty argues an ordinary definition of ▮▮▮▮▮▮▮▮ would foreclose—after joining the Comcast Litigation "defensively," Harris and Comcast later settled the action and entered into the ▮▮▮▮▮▮▮▮▮▮▮▮ after which BDIP was paid its ▮▮▮▮▮▮▮▮▮▮▮.

**B. Acacia Deal**

Regarding the April 20, 2020 sale of Harris's patents to Acacia, BDIP argues that it has no obligation to pay North Forty a ▅▅▅▅ for this sale because the Consulting Agreement's March 27, 2020 termination ended its obligations to North Forty under the Agreement. BDIP additionally argues that no obligation to pay a ▅▅▅▅ accrued when Harris and Acacia entered into the earlier deal in February 2020 that Acacia terminated in March 2020. However, BDIP has not met its burden in "clearly establish[ing] on the face of the pleadings that no material issue of fact remains to be resolved" regarding North Forty's entitlement to a ▅▅▅▅ on the February 2020 agreement between Harris and Acacia, and therefore is not "entitled to judgment as a matter of law" on its second claim for declaratory relief. *Hal Roach Studios*, 896 F.2d at 1550.

On February 21, 2020, Harris and Acacia entered into an agreement whereby Acacia would purchase Harris's patents. (Dkt. No. 28-4 at 16 ¶ 46.) On February 27, 2020, BDIP provided North Forty with notice of the Consulting Agreement's termination, effective March 27, 2020. (Dkt. No. 28-4 at 17 ¶ 47.) In early March 2020, prior to the Consulting Agreement's effective termination, Acacia decided not to proceed with its purchase of the Harris patents. (Dkt. No. 28-4 at 17 ¶ 49.) On April 20, 2020, Harris agreed to and closed the deal on a new agreement with Acacia. (Dkt. Nos. 11-3 at 7 ¶ 43, 28-4 at 17 ¶ 50.)

Both ▅▅▅▅ and ▅▅▅▅ of the Consulting Agreement provide that BDIP agrees to pay North Forty percentages of ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ ▅▅▅▅▅▅ between a BDIP client and a ▅▅▅▅▅▅▅▅ (Dkt. No. 34-6 at 4.) While these sections differ regarding their ▅▅▅▅ requirements, both require that BDIP receive a ▅▅▅▅▅▅ from a patent agreement before North Forty qualifies to receive a ▅▅▅▅ derived from BDIP's ▅▅▅▅▅▅▅▅. Therefore, North Forty does not receive a ▅▅▅▅ unless or until BDIP receives a ▅▅▅▅▅▅▅▅ on an executed ▅▅▅▅▅▅▅▅ between a ▅▅▅▅▅▅

North Forty argues that BDIP's obligation to pay its ▅▅▅▅ accrued when Harris and Acacia entered the February 21, 2020 agreement, prior to termination of the Consulting Agreement. (Dkt. No. 40-4 at 15.) However, North Forty itself alleges that in March 2020

"Acacia determined not to proceed with the purchase of the Harris patents[.]" (Dkt. No. 28-4 at 17 ¶ 49.) Taking North Forty's allegations as pleaded, *see Ventress*, 486 F.3d at 1114, the only deal from which North Forty is eligible to receive a [redacted] arises from the April 20, 2020 purchase agreement that Acacia and Harris closed—executed approximately one month after the Agreement's termination. As such, BDIP does not owe North Forty a [redacted] on the April 20, 2020 purchase agreement. *See* Cal. Com. Code § 2106(3) (while rights under a contract based on "prior . . . performance survive[,]" "on termination all obligations which are still executory on both sides are discharged"); *see also Grant v. Aerodraulics Co.*, 91 Cal. App. 2d 68, 75 (1949) ("To 'terminate' a contract . . . means to abrogate so much of it as remains unperformed, thereby doing away with the existing agreement upon the terms and with the consequences agreed upon.") (citation omitted); *Petrus v. New York Life Ins. Co.*, No. 14-CV-2268 BAS JMA, 2015 WL 3796221, at *3 (S.D. Cal. June 18, 2015) ("On 'termination' all obligations which are still executory on both sides are discharged but any right based on prior breach or performance survives.") (citations omitted).

North Forty avers that "evidence is available from which a trier-of-fact could infer" BDIP terminated of the Consulting Agreement "immediately, and only" after its alleged obligation to pay North Forty a [redacted] accrued following the February 2020 patent purchase agreement between Harris and Acacia, and that on this basis the Consulting Agreement was terminated in "bad faith" in order to avoid paying North Forty the [redacted]. (Dkt. No. 40-4 at 16.) The evidence North Forty offers in support of this argument—a series of text message and e-mail conversations—cannot properly be considered on a motion for judgment on the pleadings. *See Heliotrope Gen., Inc.*, 189 F.3d at 981 n.18. While North Forty cites allegations in its amended counterclaim that BDIP provided North Forty with notice that it would not pay North Forty a [redacted] regarding the February 2020 patent purchase agreement between Harris and Acacia contemporaneously with its notice of terminating the Consulting Agreement, neither North Forty's amended counterclaim nor BDIP's complaint allege that BDIP received a [redacted] payment from the February 2020 agreement on which any payment of North Forty's [redacted] would arise. At oral argument, North Forty argued that the April 20, 2020 deal between Harris

10

and Acacia was a continuation of the parties' February 2020 deal, and that the COVID-19 pandemic "paused" the deal throughout March. This argument that the COVID-19 pandemic "paused" an ongoing deal, however, differs from the amended counterclaim's allegation that in March 2020 Acacia "determined not to proceed with the purchase of the Harris patents under the existing terms of the [February 2020]" agreement, and that the COVID-19 pandemic was the "reason [for] Acacia's election not to proceed under the terms" of the parties' February 2020 agreement, and instead execute the April 20, 2020 agreement. (Dkt. No. 27 at 17 ¶¶ 49-50.) Furthermore, as BDIP contends, had Acacia proceeded with its February, 21 2020 purchase agreement, the agreement would have closed before the Consulting Agreement's termination became effective on March 27, 2020. Therefore, because the first purchase agreement between Harris and Acacia was executed before BDIP provided North Forty with notice of the Consulting Agreement's termination, BDIP's termination of the Consulting Agreement could not have obviated its contractual obligation to pay North Forty any properly accrued ▇▇▇ on the February 2020 purchase agreement between Harris and Acacia.

Accordingly, BDIP had no obligation to pay North Forty a ▇▇▇ regarding the patent sale agreement Harris and Acacia executed on April 20, 2020, and based on the current pleadings the Court cannot conclude that BDIP's termination of the Consulting Agreement was done in bad faith.

* * *

For the reasons set forth above, ▇▇▇ as used in the Consulting Agreement is unambiguous, and as a result North Forty is—under the Agreement's plain terms—as a matter of law entitled to a ▇▇▇ from BDIP's ▇▇▇ in the Comcast Litigation and the ▇▇▇. Furthermore, as currently pleaded, a patent sale agreement between Harris and Acacia did not close until April 20, 2020—approximately one month after the Consulting Agreement was terminated—and therefore BDIP has no obligation to pay North Forty a ▇▇▇ regarding the April 20, 2020 patent sale agreement.

Nonetheless, a material issue of fact remains to be resolved regarding any ▇▇▇ ▇▇▇ BDIP may have received in February 2020 when Harris and Acacia entered into their first

11

1  patent purchase agreement. (Dkt. No. 28-4 at 16-17 ¶ 46.) North Forty alleges that Acacia elected
2  not to proceed under the February 2020 agreement's terms, but its amended counterclaim contains
3  no allegations that conclusively foreclose the possibility BDIP received a ▓▓▓▓▓▓ on
4  the February 2020 agreement from which North Forty could or should have received a derivative
5  ▓▓▓▓▓▓ Therefore, BDIP has failed to "*clearly* establish[] on the face of the pleadings that *no*
6  *material issue of fact remains to be resolved*" regarding North Forty's success fee and the
7  February 2020 agreement "[such] that [BDIP] is entitled to judgment as a matter of law." *Hal*
8  *Roach Studios*, 896 F.2d at 1550 (emphasis added) (citation omitted). Accordingly, the Court
9  denies without prejudice BDIP's motion regarding its second claim for declaratory relief.

## II. Administrative Motions to Seal

There is a presumption of public access to judicial records and documents. *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Courts generally apply a "compelling reasons" standard when considering motions to seal documents, recognizing that "a strong presumption in favor of access is the starting point." *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006) (internal quotations and citations omitted).

Civil Local Rule 79-5 supplements the "compelling reasons" standard. *Exeltis USA Inc. v. First Databank, Inc.*, Case No. 17-cv-04810-HSG, 2020 WL 2838812, at *1 (N.D. Cal. June 1, 2020). Under Civil Local Rule 79-5(b), sealing is appropriate only where the requesting party "establishes that the document, or portions thereof is privileged or protectable as a trade secret or otherwise entitled to protection under the law," or "sealable." N.D. Cal. Civ. L.R. 79-5(b). Confidential business information in the form of "license agreements, financial terms, details of confidential licensing negotiations, and business strategies" satisfies the "compelling reasons" standard. *Exeltis USA Inc.*, 2020 WL 2838812, at *1; *see also In re Qualcomm Litig.*, No. 3:17-cv-0108-GPC-MDD, 2017 WL 5176922, at *2 (S.D. Cal. Nov. 8, 2017) (observing that sealing is warranted to prevent competitors from "gaining insight into the parties' business model and strategy"); *Finisar Corp. v. Nistica, Inc.*, No. 13-cv-03345-BLF (JSC), 2015 WL 3988132, at *4-5 (N.D. Cal. June 30, 2015).

BDIP seeks to file under seal excerpts of its motion, the attached Consulting Agreement,

and excerpts of its reply, and North Forty seeks to seal excerpts of its opposition and supporting documents. (Dkt. Nos. 34, 40, 44.) The Court considers these motions in order.

### A. Sealing & Rule 12(c) Motion

BDIP seeks to file under seal excerpts of its motion that relate to the Consulting Agreement, as well as the Consulting Agreement itself, in order to "avoid any potential breach of its confidentiality obligations to third parties as well as to protect its own confidential information." (Dkt. No. 34-1 at 2.) BDIP avers that it is also under a contractual obligation to "hold the [Consulting Agreement] in confidence." (*Id.*)

The Court has previously determined that explicit references to terms from the Consulting Agreement reflect confidential business information and dealings between the parties that are not intended for public disclosure, and therefore warrant sealing. (Dkt. Nos. 17 at 4, 26 at 2.) *See also Finistar Corp.*, 2015 WL 3988132, at *4. Accordingly, excerpts from and explicit references to terms from the Consulting Agreement in BDIP's motion—as well as the attached copy of the Consulting Agreement—are sealable. However, as the Court has previously noted, the names of third-parties in this action constitute neither trade secrets nor confidential information. (Dkt. No. 17 at 3.) Therefore, providing the names of Harris and Acacia in excerpts of the motion that BDIP seeks to seal does not warrant sealing. (Dkt. No. 34-4 at 4, 7.) Likewise, a reference to the "Comcast Litigation"—which BDIP discloses in its publicly filed complaint—does not warrant sealing. (*Id.* at 8.) Finally, to the extent that the motion characterizes or quotes portions of North Forty's counterclaim and amended counterclaim that are not subject to sealing, these excerpts of the motion are likewise undeserving of seal. (*Id.* at 9.)

### B. Sealing & Opposition

North Forty seeks to seal excerpts of its opposition and attached documents regarding the "content of confidential agreements" to which BDIP and North Forty are a party. (Dkt. No. 40 at 1-2.) For the reasons set forth above, references to or quotations from the Consulting Agreement in North Forty's opposition as well as the attached exhibits are sealable. Furthermore, communications and excerpts in the attached exhibits reflect the parties' negotiations and business strategies regarding the Consulting Agreement, and these warrant sealing as well. *See Exeltis*,

13

2020 WL 2838812, at *1; *In re Qualcomm Litig.*, 2017 WL 5176922, at *2.  Exhibit A's April 27, 2017 e-mail from Ms. De Mory contains confidential personal information, and this too is deserving of seal.  *See Nursing Home Pension Fund v. Oracle Corp.*, No. C01-00988 MJJ, 2007 WL 3232267, at *2 (N.D. Cal. Nov. 1, 2007) ("[C]ompelling reasons exist to keep personal information confidential to protect an individual's privacy interest[.]")  However, a reference to the "Comcast Litigation" is, as explained previously, undeserving of seal.  (*See* Dkt. No. 40-4 at 12.)

### C. Sealing & Reply

BDIP seeks to seal excerpts of the reply regarding the Consulting Agreement.  (Dkt. No. 44-1 at 2.)  These excerpts reference or quote the Consulting Agreement, or reflect other confidential business information regarding "license agreements, financial terms, [and] details of confidential licensing negotiations," *Exeltis USA Inc.*, 2020 WL 2838812, at *1, and therefore these excerpts are deserving of seal.  However, the reply's statement that the "only Harris-Acacia deal under which anyone got paid was the second one," and that it was the only deal to "result in any payments[,]" characterizes the *outcome* of confidential negotiations—this statement is not itself confidential, nor does it reflect any confidential information or specific terms from the Consulting Agreement that sealing is intended to protect. (Dkt. No. 44-4 at 8.)  Similarly, the reply's statement that termination of the Consulting Agreement could not have affected whatever interest North Forty had in the first deal between Harris and Acacia betrays no confidential terms from the Consulting Agreement, or any information regarding financial terms or details of negotiations, and for this reason this excerpt does not warrant sealing.  (*Id.* at 8.)

## CONCLUSION

For the reasons set forth above, BDIP's motion for judgment on the pleadings regarding its first claim for declaratory relief is GRANTED, and its motion regarding the second claim for declaratory relief is DENIED without prejudice.  The parties' administrative motions to seal are GRANTED in part and DENIED in part.  The parties shall file unredacted versions of their briefs in compliance with this Order within 7 days.

This Order disposes of Dkt. Nos. 34, 35, 40, and 44.

**IT IS SO ORDERED.**

Dated: January 22, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge