SINGER CASHMAN LLP
  Benjamin L. Singer (Bar No. 264295)
  bsinger@singercashman.com
  Walter C. Pfeffer (Bar No. 289421)
  wpfeffer@singercashman.com
601 Montgomery Street, Suite 1950
San Francisco, California 94111
Telephone:    (415) 500-6080
Facsimile:    (415) 500-6080

*Attorneys for Bunsow De Mory LLP*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISON

| | |
|---|---|
| BUNSOW DE MORY LLP, a California limited liability partnership,<br><br>    Plaintiff and Counterclaim Defendant,<br><br>v.<br><br>NORTH FORTY CONSULTING LLC, a Delaware limited liability company,<br><br>    Defendant and Counterclaimant. | CASE NO. 3:20-CV-04997<br><br>**PLAINTIFF'S NOTICE OF MOTION, MOTION, AND MEMORANDUM IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Filing Date:  July 24, 2020<br>Trial Date:   Dec. 6, 2021<br><br>Hearing Date:  December 24, 2021<br>Hearing Time:  9:00 a.m.<br>Courtroom:     E, 15th Floor<br>Judge:         Hon. Jacqueline Corley, M.J. |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:** Please take notice that on December 24, 2020 at 9:00 a.m. before the Honorable Magistrate Judge Jacqueline Scott Corley in the United States District Court for the Northern District of California, Courtroom E, located on the 15th Floor of the San Francisco Courthouse at 450 Golden Gate Avenue, San Francisco, California 94102, or via remote access at the Court's preference pursuant to the Northern District of California's guidelines regarding the COVID-19 pandemic, Plaintiff and Counterclaim Defendant Bunsow De Mory LLP ("BDIP") by and through its attorneys will and hereby does move pursuant to Federal Rule of Civil Procedure 12(c) for an order granting judgment on the pleadings on BDIP's first and second claims for declaratory relief.  As explained more fully in the accompanying Memorandum of Points and Authorities, Defendant and Counterclaimant North Forty Consulting LLC's ("North Forty") Answer, Affirmative Defenses, and Counterclaims (Dkt. 18-1) ("Answer"), North Forty's First Amended Answer, Affirmative Defenses, and Counterclaims (Dkt. 28-4) ("1st Am. Answer"), the documents incorporated therein, and documents subject to judicial notice make clear that (1) the litigation between BDIP's client and Comcast Corporation was a "litigation" within the meaning of the parties' contract and that North Forty was therefore only entitled to the lesser fee that it received, and (2) BDIP is not required to pay any success fee to North Forty with regard to the Acacia patent sale.  Accordingly, BDIP respectfully requests that the Court grant judgment on the pleadings for these two aspects of BDIP's first and second claims for declaratory relief.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, BDIP's Request for Judicial Notice, the Declaration of Walter C. Pfeffer in Support of the Motion and the documents attached thereto, North Forty's Answer, North Forty's First Amended Answer, all pleadings and papers on file with the Court, the argument of counsel at the hearing, and any other matters that the Court may properly consider.

//
//
//

1  Date: November 19, 2020            Respectfully submitted,

2                                     SINGER CASHMAN LLP

4                                     By: /s/ Walter C. Pfeffer
                                          Benjamin L. Singer
                                          Walter C. Pfeffer

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant North Forty Consulting LLC's ("North Forty") responsive pleadings lead to only one conclusion: North Forty is not entitled to any further payments with regard to the Comcast license or the Acacia sale. Plaintiff Bunsow De Mory LLP ("BDIP") is thus entitled to judgment as a matter of law on its first and second claims for declaratory relief.

Under the parties' September 1, 2017 Consulting Agreement ("Consulting Agreement" or "Agreement"), ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ L3Harris Technologies, Inc. ("Harris"). ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. In December 2019, Harris was sued by Comcast Corporation ("Comcast"). After that litigation settled, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉. North Forty now argues that the Comcast litigation was not a "litigation" under the Consulting Agreement. North Forty is wrong as a matter of law.

In addition, the parties agree that the Consulting Agreement was terminated effective March 27, 2020, and that Harris sold its patent portfolio to Acacia Research Corporation ("Acacia") on April 20, 2020—a month after the Consulting Agreement was terminated. Nonetheless, North Forty argues that it is entitled to payment under the terminated Consulting Agreement. Again, North Forty is wrong as a matter of law.

To be clear, each of these facts is specifically averred in North Forty's own pleadings. North Forty argues that the Consulting Agreement might not mean what it says, but the contract is unambiguous and the material facts undisputed. The Court should therefore issue declaratory judgments on the pleadings that (1) the litigation between Harris and Comcast was a "litigation" within the meaning of the Consulting Agreement and that North Forty was therefore only entitled to the 20% success fee it received, and (2) BDIP is not required to pay any success fee to North Forty with regard to the Acacia sale.

## II. STATEMENT OF FACTS

### A. North Forty Joins the BDIP-Harris Licensing Program

BDIP is a law firm. Using its deep experience in patent litigation and licensing, BDIP works with some of its clients to help monetize their patent portfolios. Harris was one such client. Compl. (Dkt. 11-3) ("Compl.") ¶¶ 15–17. In mid-2016, BDIP began working with Harris on a new program ("Licensing Program") to monetize a portfolio of Harris's patents ("Patents"). BDIP and Harris would identify companies that were infringing on the Patents and Harris would enter into licensing agreements with them—without litigation if possible. *Id.* at ¶ 17.

North Forty was created by David Barnes and Aaron Wexler to provide consulting services for monetizing intellectual property such as the Patents. Compl. ¶ 18; First Amended Answer (Dkt. 28-4) ("Answer") ¶ 18[1]. In early 2017, North Forty's principals approached BDIP to ask whether North Forty could assist BDIP with any patent licensing efforts, and BDIP suggested the Harris Licensing Program. BDIP and Harris entered into the Consulting Agreement on September 1, 2017. Answer ¶ 19–21; Compl. ¶ 19–21; Pfeffer Decl. Ex. A ("Consulting Agreement" or "Agmt.").

### B. The Consulting Agreement is Clear and Unambiguous

The Consulting Agreement governed the relationship between BDIP and North Forty with regard to the Licensing Program. 

Counterclaims (Dkt. 18-1) ("Countercl.") ¶ 15; First Amended Counterclaims ("Am. Countercl.") (Dkt. 28-4) ¶ 19; Agmt. § 3.1.

---

[1] North Forty's Answer and First Amended Answer are identical. All citations to "Answer" are applicable to both.

- 2 -
PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS
CASE NO. 3:20-CV-04997

1  ███████████████████████████████████████████
2  ███████████████████████████████████████████████████████████████
3  ██████████████████████. Compl. ¶ 19–21; Answer ¶ 19–21; Agmt. § 7.1.

### C. Comcast Initiated Litigation Against Harris

One of the potential licensees that Harris approached was Comcast. Compl. ¶ 33; Countercl. ¶ 31; Am. Counterc. ¶ 35.  As North Forty explicitly avers, on December 9[2], 2019, "Comcast filed a declaratory action [regarding the Patents] against Harris" in Delaware federal court.  Am. Countercl. ¶ 37; *see also* Compl. ¶ 33; Countercl. ¶ 33; BDIP's Request for Judicial Notice ("RJN") ¶ 3, Ex. B[3].  BDIP represented Harris in that action, filing two stipulations to extend Harris's time to respond to the Complaint.  Countercl. ¶ 34; Am. Countercl. ¶ 38; RJN Ex. B.  On February 18, 2020, Harris and Comcast executed a license agreement and settled their case.  Compl. ¶ 37; Am. Countercl. ¶ 39; Countercl. ¶ 35; RJN Ex. B.

The Consulting Agreement plainly states—as directly quoted in North Forty's Counterclaim and First Amended Counterclaim—that ████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████ (Countercl. ¶ 15; Am. Countercl. ¶ 19; Agmt. § 3.1). ████████████████████████████████████████████████████. Compl. ¶¶ 39–40, 47–50; Answer ¶ 39; Countercl. ¶¶ 36, 47–51, 56; Am. Countercl. ¶¶ 40, 47, 57–61, 66.

### D. Harris Sold the Patents to Acacia After the Consulting Agreement was Terminated

In the fall of 2019, Acacia Research Corporation ("Acacia") and Harris began negotiating Acacia's purchase of the Patents. Compl. ¶ 31; Countercl. ¶ 30; Am. Countercl. ¶ 34.  On February 21, 2020, Harris and Acacia entered into a contract for the sale of the Patents.  Compl. ¶ 36; Countercl. ¶ 37; Am. Countercl. ¶ 46.  That initial deal included a due diligence period.  Compl. ¶ 36. While the parties disagree on the reason, there is no dispute that "[i]n or around March 2020, Acacia

---

[2] While North Forty alleges that the Comcast Litigation was instituted on December 11, 2019, the docket reflects a filing on December 9, 2019.  *See* Countercl. ¶ 33; RJN Ex. B.  The difference is immaterial to this Motion.
[3] The records of the Comcast Litigation constitute proceedings in other courts of which the Court may take judicial notice. *See U.S. ex rel. Robinson Rancheria Citizens Counsel v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (collecting cases).

1  determined not to proceed with the purchase of the Harris patents" and the deal terminated.  Am.
2  Countercl. ¶ 49; *see also* Compl. ¶ 41; Countercl. ¶ 40.

3        The Consulting Agreement terminated thereafter.  BDIP provided notice of termination of the
4  Consulting Agreement on February 27, 2020.  Compl. ¶ 38; Answer ¶ 38; Countercl. ¶ 38; Am.
5  Countercl. ¶ 47.  North Forty even affirmed that termination and noted its appropriateness.  Compl.
6  ¶ 38; Answer ¶ 38.  Under Section 7.1 of the Consulting Agreement, termination was effective as of
7  March 27, 2020.  *Id.*

8        On April 20, 2020, a month after the Consulting Agreement terminated, Harris and Acacia
9  entered into a new contract for the sale of the Patents—and this time the deal closed.  Compl. ¶ 43;
10 Countercl. ¶ 41; Am. Countercl. ¶ 50.  Despite the fact that the Consulting Agreement had been
11 terminated, North Forty asserts that it should be paid ▮▮▮▮▮▮▮ for the sale of the Patents to
12 Acacia.  Compl. ¶ 54; Countercl. ¶¶ 42, 56; Am. Countercl. ¶¶ 51, 66.

13 **III. LEGAL STANDARD**

14       Federal Rule of Civil Procedure 12(c) provides that a party may move for judgment on the
15 pleadings as soon as the pleadings are closed.  For the purposes of a Rule 12(c) motion, allegations of
16 the nonmoving party must be accepted as true, as with allegations of the moving party that have been
17 admitted; allegations made by the moving party that have been denied or contradicted are assumed to
18 be false.  *See MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081 (9th Cir. 2006); *Ventress v.*
19 *Japan Airlines*, 486 F.3d 1111, 1114 (9th Cir.2007); *Hal Roach Studios, Inc. v. Richard Feiner and*
20 *Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990).  While the Court will view all facts in the light most
21 favorable to the non-moving party, it need not accept allegations that are conclusory, contradicted by
22 judicially noticeable facts, or the product of unwarranted inferences.  *See In re Google Inc.*, No. 13-
23 md-2430-LHK, 2013 WL 5423918, at *5 (N.D. Cal. Sept. 26, 2013); *Living Designs, Inc. v. E.I.*
24 *DuPont de Nemours & Co.*, 431 F.3d 353, 360 (9th Cir. 2005).  Judgment on the pleadings should be
25 granted where the moving party establishes that no material issue of fact remains to be resolved and
26 that it is entitled to judgment as a matter of law.  *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1068 (9th
27 Cir. 2020); *see also Heliotrope General, Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.18 (9th Cir.
28 1999).

As with a motion under Rule 12(b), the Court may consider the parties' pleadings, judicially noticeable facts under Federal Rule of Evidence 201, and documents attached to or relied upon by the pleadings. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). This includes the Consulting Agreement, which is expressly incorporated into, relied upon by, and critical to North Forty's pleadings. *See* Answer ¶¶ 2, 4, 18–28; Countercl. (Dkt. 11-3) ¶¶ 1–5, 10, 14–19, 36, 38, 45, 47–51; 1st Am. Countercl. (Dkt. 28-4) ¶¶ 1–5, 10, 17–23, 40, 43–47, 54–61; *see also Vidal v. Bolton*, No. 2:18-cv-09276, 2020 WL 5652492, at *1 (9th Cir. Sep. 23, 2020); *Richardson-Bass v. State Center Community College Dist.*, No. 1-19-cv-01566, No. 2020 WL 5658225, at *1 (E.D. Cal. Sept. 23, 2020); *Hamilton v. Juul Labs, Inc.*, No. 20-cv-03710, 2020 WL 5500377, at *2 n.3 (N.D. Cal. Sep. 11, 2020).

## IV. ARGUMENT

### A. The Comcast Litigation was a "Litigation" Within the Meaning of the Consulting Agreement

North Forty is not entitled to ▮▮▮▮▮▮▮▮▮▮ arising from the Comcast litigation. ▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮. Countercl. ¶ 15; Am. Countercl. ¶ 19; Agmt. § 3.1.

There is no dispute that Harris, a BDIP client, and Comcast were parties to a litigation involving the Patents. North Forty explicitly avers that "Comcast filed a declaratory judgment action against Harris" within a section of the Counterclaims entitled "The Comcast Initiated Litigation." Countercl. ¶ 33; Am. Countercl. ¶ 37. Even had North Forty not explicitly incorporated this fact into its pleading, the Court may take judicial notice of the lawsuit. *See* RJN ¶ 3, Ex. B. The terms of the Consulting Agreement are clear: ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮ Harris and Comcast were parties to a litigation on the Patents.

1    North Forty's attempts to conjure ambiguity into the Consulting Agreement are contrary to
2 the plain meaning of the Agreement and California[4] law.  North Forty argues that ▌
3 ▌ "the litigation limitation on
4 the success fee was intended for offensive filings on behalf of BDIP's clients and not defensive
5 filings like the Comcast Litigation." Countercl. ¶ 36; Am. Countercl. ¶ 40.  The Counterclaim
6 suggests that this interpretation is consistent with the parties' unwritten intent and with some
7 unidentified industry practice for litigation funding.  *Id.*  California courts do not interpret contracts in
8 this manner.

9    California contract law provides that the clear language of a contract governs its
10 interpretation, and that the written terms of the contract are the sole source for ascertaining the
11 parties' intent.  Cal. Civ. Code §§ 1638–39; *see also Block v. eBay, Inc.*, 747 F.3d 1135, 1138 (9th
12 Cir. 2014) ("If a contract is reduced to writing, the intention of the parties is to be ascertained from
13 the writing alone, the words being interpreted in their ordinary and popular sense…." (internal
14 quotation marks and citations omitted)); *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App.
15 4th 1107, 1126 (Cal. App. 2008) ("Ordinarily, the objective intent of the contracting parties is a legal
16 question determined solely by reference to the contract's terms.").  "When a dispute arises over the
17 meaning of contract language, the first question to be decided is whether the language is reasonably
18 susceptible to the interpretation urged by the party.  If it is not, the case is over." *Cedars-Sinai*
19 *Medical Center v. Shewry*, 137 Cal. App. 4th 964, 979 (Cal. Ct. App. 2006).

20    The language of the Consulting Agreement is not susceptible to North Forty's proposed
21 interpretation.  ▌
22 ▌.  Countercl. ¶ 15; Am. Countercl. ¶ 19; Agmt. § 3.1.  The parties are
23 bound by the objective plain meaning of that language: ▌
24 ▌.  *Cf. Khan v. Shim*, 7 Cal.
25 App. 5th 49, 59–62 (Cal. Ct. App. 2016) (holding that contract clause addressing "litigation" included
26 any claims brought between the parties).

27 ─────────────────
28 [4] The Consulting Agreement provides that its provisions are to be governed by and interpreted in accordance with California law.  Agmt. § 8.5.

1    North Forty's argument regarding its subjective intent is irrelevant: "California recognizes the
2    objective theory of contracts, under which it is the objective intent, as evidenced by the words of the
3    contract, rather that the subjective intent of one of the parties, that controls interpretation.  The
4    parties' undisclosed intent or understanding is irrelevant to contract interpretation.  *Cedars-Sinai* at
5    980 (internal citations and quotation marks omitted); *see also Lightbourne v. Printroom Inc.*, 122 F.
6    Supp. 3d 942, 948 (C.D. Cal. 2015) ("Faced with this clear and unambiguous contractual language,
7    its interpretation is a question of law, and [one party's] internal understanding—to the extent it
8    differs—is irrelevant.").

9    North Forty has directly pled that (a) ████████████████████████████████
10   ████████ and (b) a litigation occurred between Comcast and Harris.  Countercl. ¶¶ 15, 33; Am.
11   Countercl. ¶¶ 19, 37; Agmt. § 3.1.  BDIP is therefore entitled to a declaratory judgment on the
12   pleadings that North Forty was entitled to only a 20% success fee for the Comcast license under the
13   Consulting Agreement.  *Cf. Grange Ins. Assoc. v. Price*, No. 1:19-cv-00258, 2020 WL 5412064, at
14   *9 (E.D. Cal. Sep. 9, 2020) (granting summary judgment declaring contractual rights).

15   **B.  North Forty Is Not Owed a Success Fee for the Acacia Deal**

16   Similarly, North Forty is not entitled to any success fee for Harris's sale of the Patents to
17   Acacia.  The material facts are not in dispute.  North Forty's Answer specifically admits that the
18   Consulting Agreement terminated on March 27, 2020.  Compl. ¶ 38; Answer ¶ 38; Countercl. ¶ 38;
19   Am. Countercl. ¶ 47; Agmt. § 7.1.  And North Forty's Amended Counterclaim explicitly states that
20   the Acacia sale occurred "[o]n or about April 20, 2020," nearly a month after the Consulting
21   Agreement was terminated.  Am. Countercl. ¶ 50; *see also* Compl. ¶ 43; Countercl. ¶ 41.  ██
22   ████████████████████████████████████████████████████████████████
23   ████████████████████████.  *See generally* Agmt.  Absent any such clause, termination of a
24   contract discharges all obligations on both sides of the contract—including any obligation to pay
25   success fees going forward.  *See* Cal. Comm. Code § 2106(3); *see also* 1 Witkin, Summary Cal. L.
26   11th Contracts § 955 (2020) ("On 'termination' all obligations which are still executory on both sides
27   are discharged…."); *Petrus v. N.Y. Life Ins. Co.*, No. 14-cv-2268, 2015 WL 3796221, at *3 (S.D. Cal.
28

1  Jun. 18, 2015) (dismissing contract claim with prejudice).  Because the Acacia sale occurred after the

2  Consulting Agreement was terminated, BDIP had no obligation to pay North Forty a success fee.

## V. CONCLUSION

As demonstrated above, there is no dispute as to any material fact involving North Forty's claim that it is owed additional success fees in connection with either the Comcast license or the Acacia sale.  To the contrary, each element of BDIP's declaratory judgment claims is either admitted in North Forty's Answer or explicitly alleged in its Counterclaims.  BDIP therefore respectfully requests that the Court grant a declaratory judgment on the pleadings that (1) the litigation between Harris and Comcast was a "litigation" within the meaning of the Consulting Agreement and that North Forty was therefore only entitled to the 20% success fee it received, and (2) BDIP is not required to pay any success fee to North Forty with regard to the Acacia sale.

Date: November 19, 2020                    Respectfully submitted,

SINGER CASHMAN LLP

By: /s/ Walter C. Pfeffer
    Benjamin L. Singer
    Walter C. Pfeffer
    *Attorneys for Bunsow De Mory LLP*

